# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HARD DRIVE PRODUCTIONS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:11-cv-01741 |
| | ) | |
| v. | ) | Judge Bates |
| | ) | |
| DOES 1-1,495 | ) | Magistrate Judge Facciola |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION'S BRIEF REQUESTING RECONSIDERATION AND STAY OF DECEMBER 21 ORDER

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................3

I.  The December 21 Order Erroneously Forecloses Any Application of the First Amendment
    to the Motions to Quash. ...........................................................................................3

    A.  The Right to Engage in Anonymous Speech is Protected by the First Amendment. ........4

    B.  The First Amendment Requires That The Motions to Quash Subpoenas For
        Identification Filed Under Seal Be Accepted And Considered Under Seal. ...................6

II.  HDP Has Not Established Personal Jurisdiction Over Most of the Defendants Nor A Good
     Faith Basis for Jurisdictional Discovery. ...................................................................8

    A.  Jurisdictional Discovery Requires a Showing of Good Cause. ......................................9

    B.  HDP Has Not Shown Good Cause To Expect That Defendants Were Domiciled in
        this District. ............................................................................................................10

    C.  HDP Has Not Made a Plausible Showing that the Court Has Personal Jurisdiction
        Over the Defendants Based on Alleged Acts of Copyright Infringement Occurring
        in "Every Jurisdiction, Including This One." ..............................................................10

III.  Mass Joinder is Improper. .........................................................................................12

    A.  Federal Courts Are Increasingly Rejecting Attempts at Mass Joinder Such As HDP
        Attempts Here. .........................................................................................................13

    B.  Plaintiff Has Not Established a Concert of Action Among Defendants. ........................14

    C.  Plaintiff Has Not Shown a Question of Law or Fact in Common to All Defendants. ....15

    D.  Mass Joinder Will Unfairly Prejudice Defendants. ....................................................16

CONCLUSION ...............................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577,*
    736 F. Supp. 2d 212 (D.D.C. 2010) ......................................................................... 7, 8, 12

*ALS Scan, Inc. v. Digital Service Consultants,*
    293 F.3d 707 (4th Cir. 2002) ......................................................................................... 11

*Arista Records LLC v. Does 1-19,*
    551 F. Supp. 2d 1 (D.D.C. 2008) ....................................................................................6

*Best W. Int'l, Inc. v. Doe,*
    CV-06-1537-PHX-DGC, 2006 WL 2091695 (D. Ariz. July 25, 2006).............................. 5

*BMG Music v. Does 1-203,*
    No. 04-0650, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004).......................................... 13, 15

*BMG Music v. Does 1-4,*
    No. 06-1579, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. July 31, 2006)......................... 13

*Buckley v. Am. Constitutional Law Found.,*
    525 U.S. 182 (1999)................................................................................................... 4, 5

*Call of the Wild Movie, LLC v. Does 1-1,062,*
    770 F. Supp. 2d 332 (D.D.C. 2011) ............................................................................ 4, 6

*Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC,*
    148 F.3d 1080 (D.C. Cir. 1998) ................................................................................. 9, 11

*Coleman v. Quaker Oats,*
    232 F.3d 1271 (9th Cir. 2000) ....................................................................................... 16

*Coughlin v. Rogers,* 130 F.3d 1348 (9th Cir. 1997) ............................................................. 14, 15

*Dendrite Int'l, Inc. v. Doe No. 3,*
    775 A.2d 756 (N.J. Super. Ct. App. Div. 2001)........................................................... 5, 6

*Doe v. Cahill,*
    884 A.2d 451 (Del. 2005) ................................................................................................ 5

*Grandbouche v. Clancy,*
    825 F.2d 1463 (10th Cir. 1987) ....................................................................................... 5

*GTE New Media Services Inc. v. BellSouth Corp.,*
    199 F.3d 1343 (D.C. Cir. 2000) ......................................................... 9

*Guest v. Leis,*
    255 F.3d 325 (6th Cir. 2001) .......................................................... 6

*Helmer v. Doletskaya,*
    393 F.3d 201 (D.C. Cir. 2004) ........................................................ 11

*Highfields Capital Mgmt., L.P. v. Doe,*
    385 F. Supp. 2d 969 (N.D. Cal. 2005) .............................................. 5

*In re Verizon Internet Services, Inc.,*
    257 F. Supp. 2d 244 (D.D.C.),
    *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003) .................................. 4

*Interscope Records v. Does 1-14,*
    558 F. Supp. 2d 1176 (D. Kan. 2008) ................................................. 4

*IO Group Inc. v. Does 1 -435,*
    No. 10-4382, 2011 U.S. Dist. LEXIS 14123 (N.D. Cal. Feb. 3, 2011) ...................... 12, 13

*LaFace Records v. Does 1-38,*
    2008 WL 544992 (E.D.N.C. Feb 27, 2008)........................................... 3, 13, 14

*LFP Internet Group LLC v. Does 1-3,120,*
    No. 10-2095 (N.D. Tex. Feb. 10, 2011)............................................ 13, 14, 15

*McIntyre v. Ohio Elections Comm'n,*
    514 U.S. 334 (1995)................................................................ 4, 5, 6

*Mobilisa, Inc. v. Doe,*
    170 P.3d 712 (Ariz. Ct. App. 2007) .................................................. 5

*Mosley v. Gen. Motors Corp.,*
    497 F.2d 1330 (8th Cir. 1974) ....................................................... 14

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964).................................................................. 5

*N Nu Image, Inc. v. Does 1-23,322,*
    799 F. Supp. 2d 34 (D.D.C. 2011) .............................................. 9, 10, 11, 16

*Pacific Century Int'l, Ltd. v. Does 1-101,*
    No. 11-2533 (N.D. Cal. July 8, 2011)............................................... 14, 15

*Patrick Collins, Inc. v. Does 1-72,*
    No. 1:11-cv-00058-RMU-JMF, 2012 WL 177864 (D.D.C. Jan. 23, 2012) ................ 9, 11

*People Pictures, LLC v. Group of Participants in Filesharing Swarm Identified by Hash:*
    *43F4CFD05C115EE5887F680B0-CA73B1BA18B434A,*
    No. 11-cv-1968, 2011 WL 6758462 (D.D.C. Dec. 23, 2011) ......................................... 11

*Reno v. Am. Civil Liberties Union,*
    521 U.S. 844 (1997) ................................................................................................... 4

*Rundquist v. Vapiano SE,*
    798 F. Supp. 2d 102 (D.D.C. 2011) ......................................................................... 9

*Savage v. Bioport, Inc.,*
    460 F. Supp. 2d 55 (D.D.C. 2006) ........................................................................... 9

*Shelley v. Kraemer,*
    334 U.S. 1 (1948) ...................................................................................................... 5

*Silkwood v. Kerr-McGee Corp.,*
    563 F.2d 433 (10th Cir. 1977) ................................................................................. 5

*Sinclair v. TubeSockTedD,*
    596 F. Supp. 2d 128 (D.D.C. 2009) ................................................................ *passim*

*Solers, Inc. v. Doe,*
    977 A.2d 941 (D.C. 2009) ....................................................................................... 4

*Sony Music Entm't Inc. v. Does 1-40,*
    326 F. Supp. 2d 556 (S.D.N.Y. 2004) ................................................................. 4, 5

*Talley v. California,*
    362 U.S. 60 (1960) ................................................................................................... 4

*Twentieth Century Fox Film Corp. v. Does 1-12,*
    No. 04-4862 (N.D. Cal. Nov. 16, 2004) ................................................................ 13

*UMG Recordings, Inc. v. Does 1-4,*
    64 Fed. R. Serv. 3d 305 (N.D. Cal. 2006) .............................................................. 4

*UMG Recordings, Inc. v. Does 1-51,*
    No. 04-0704 (W.D. Tex. Nov. 17, 2004) .......................................................... 13, 16

*United States v. Christie,*
    624 F.3d 558 (3d Cir. 2010) .................................................................................... 6

*United States v. Jones*,
      No. 10-1259, 565 U.S. ___, ___, 2012 WL 171117 (Jan. 23, 2012) ................................ 6

*Voltage Pictures LLC v. Does 1-5,000*,
      79 Fed. R. Serv. 3d 891 (D.D.C. 2011) ......................................................... 12

*VPR Internationale v. Does 1-1017*,
      No. 11-2068 (C.D. Ill. Apr. 29, 2011) ......................................................... 15

*Washington v. Sandoval*,
      No. 10-0250, 2011 U.S. Dist. LEXIS 43377 (N.D. Cal. Apr. 19, 2011) ........................ 15

*W. Coast Productions, Inc. v. Does 1-2010*,
      Case No. 3:10-CV-93 (N.D. W.Va., Dec. 16, 2010) ...................................... 3, 13

*World-Wide Volkswagen Corp. v. Woodson*,
      444 U.S. 286 (1980) ............................................................................. 9

## Statutes

D.C. Code § 13-422 (2001) ............................................................................. 9

D.C. Code § 13-423 (2001) ......................................................................... 9, 11

## Rules

Fed. R. Civ. P. 20 ................................................................................. *passim*

Fed. R. Civ. P. 21 ................................................................................... 16

## Constitutional Provisions

U.S. Const. am. 1 ................................................................................ *passim*

U.S. Const. am. 4 ..................................................................................... 6

## INTRODUCTION

Amicus Electronic Frontier Foundation ("EFF") urges this Court to stay the public filing of sealed motions to quash currently scheduled for February 1, 2012 and to reconsider the December 21, 2011 Order (ECF No. 18).   EFF further requests that the Court exercise its inherent authority over discovery to quash all of Plaintiff Hard Drive Productions Inc.'s ("HDP") subpoenas for the identities of Internet users, and stay all discovery.

The subpoenas in question and the Order should be evaluated in the context in which this case was brought.  This case is one of a growing number of mass copyright lawsuits, affecting over 200,000 people to date,[1] in which different plaintiffs have sued John Doe defendants from all over the country, alleging copyright infringement of pornographic works.  These cases raise serious problems of fairness, due process, and individual justice.

Moreover, the cases do not appear to be filed with the intention of litigating them.  Instead, it seems that plaintiffs' lawyers hope to take advantage of the threat of an award of statutory damages and attorney's fees, as well as the stigma that is associated with downloading pornographic movies, to induce anonymous defendants into settling the case notwithstanding any meritorious defenses.  All that such lawyers require from the Court to pursue this strategy is the identity of the anonymous defendants.  Thus, a ruling on whether Plaintiff will be able to obtain the identities of the Defendants may be the last chance that the Court has to ensure that the Defendants are treated justly – and that they will not be induced to settle by the fear of embarrassment or humiliation.

The December 21 Order raises a grave constitutional problem, made more serious by the factual context of this lawsuit.  As explained in (for example) *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 131-33 (D.D.C. 2009), individuals who communicate online – *including* those whose communications are alleged to violate copyright law – have a First Amendment right to

---

[1] *See* Ernesto, *200,000 BitTorrent Users Sued in the United States*, TorrentFreak (Aug. 8, 2011),        http://torrentfreak.com/200000-bittorrent-users-sued-in-the-united-states-110808 (accessed Jan. 26, 2012).

anonymity that cannot be abrogated without the Court first considering the sufficiency of the complaint and balancing its soundness against that fundamental right.   Several individuals, relying on this right and on Judge Bates's order of November 2, 2011 (ECF No. 6)[2] filed motions to quash HDP's subpoenas.   Some of these movants filed their motions under seal.   The December 21 Order offered movants the choice of having the Court reveal their identities by unsealing their motions, or withdrawing the motions, which will allow their Internet service providers (ISPs) to reveal their identities in response to an unchallenged subpoena.   In other words, the Order required movants to forfeit their First Amendment right to anonymous speech as a *precondition* to asserting that right in a motion to quash.   The constitutional defect in that order is clear, as the Court has refused to hear the movants' arguments for anonymity without their consent to moot that argument from the start. The order also applied the wrong test – the "reasonable expectation of privacy" standard of Fourth Amendment jurisprudence – rather than the test for the protection of anonymous speech under the First Amendment, which requires a factual proffer plausibly showing the sufficiency of the complaint.

Apart from the problem of requiring movants to forfeit their constitutional right in order to defend it, HDP has not established that this Court has personal jurisdiction over any defendant.   The only evidence presented so far indicates that as to most of the defendants, the alleged acts of infringement took place outside of the jurisdiction.   HDP's only basis for jurisdiction over these defendants is pure speculation which, according to the law of this Circuit, does not permit jurisdictional discovery.

In addition, HDP has improperly joined 1,495 unrelated Defendants into this single action, jeopardizing their rights to an individual evaluation of their actions and defenses.   As explained by a West Virginia federal court in response to a strikingly similar set of facts, "merely committing the same type of violation in the same way does not link defendants together for

---

[2] "The Court will place any compliant Motion to Quash from any Doe Defendant under seal. Thus, neither Plaintiffs nor the public will be able to access Defendants' identifying information. The Motions to Quash will remain under seal even if they are ultimately denied."

purposes of joinder." *W. Coast Productions, Inc. v. Does 1-2010*, Case No. 3:10-CV-93 (N.D. W.Va., Dec. 16, 2010) (quoting *LaFace Records v. Does 1-38*, 2008 WL 544992, at *2 (E.D.N.C. Feb 27, 2008)).

Reconsideration is appropriate where manifest injustice would result. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Given the deficiencies in HDP's Complaint and the rights at stake, the Court should evaluate the sealed motions to quash while protecting the identities of the filers. Moreover, given the jurisdictional and joinder deficiencies described below, the Court should *sua sponte* quash all of the outstanding subpoenas, stay all discovery, and instruct HDP to:

1) bring suit in courts that appear likely to be able to properly exercise personal jurisdiction over the individual Defendants;

2) re-file this action against each defendant individually; and

3) meet the heightened First Amendment discovery standard prior to making any attempt to identify the anonymous Defendants.

## ARGUMENT

### I.   The December 21 Order Erroneously Forecloses Any Application of the First Amendment to the Motions to Quash.

Plaintiffs are often allowed discovery at the outset of a lawsuit to identify otherwise unknown persons alleged to have committed a legal wrong. However, when the conduct at issue is constitutionally-protected expressive activity, the court must apply First Amendment safeguards. The December 21 Order did not apply any First Amendment test, and foreclosed defendants from even raising a First Amendment challenge to the subpoenas without revealing their identities. Especially given the number of Doe Defendants affected and the pornographic nature of the works in question, it is crucial that the Court apply the correct procedure here, allow motions to quash to remain under seal, and require Plaintiff to follow the appropriate procedures before individuals' identities are disclosed.

A.    **The Right to Engage in Anonymous Speech is Protected by the First Amendment.**

The Supreme Court has consistently upheld the right to anonymous speech in a variety of contexts, noting that "[a]nonymity is a shield from the tyranny of the majority . . . [that] exemplifies the purpose [of the First Amendment] to protect unpopular individuals from retaliation . . . at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995); *see also Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 199 (1999); *Talley v. California*, 362 U.S. 60, 64 (1960). This fundamental right enjoys the same protections whether the context for speech and association is an anonymous political leaflet, an Internet message board or a video-sharing site. *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997) (there is "no basis for qualifying the level of First Amendment scrutiny that should be applied to" the Internet). *See also, e.g., Sinclair*, 596 F. Supp. 2d at 131 ("Generally speaking, the First Amendment protects the right to speak anonymously. . . . Such rights to speak anonymously apply, moreover, to speech on the Internet."); *Solers, Inc. v. Doe*, 977 A.2d 941, 951 (D.C. 2009).

First Amendment protection extends to the anonymous publication of expressive works on the Internet, including publication using the BitTorrent protocol, even if the publication is alleged to infringe copyright. *See In re Verizon Internet Services, Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C.), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003); *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 350 (D.D.C. 2011) ("[F]ile-sharers are engaged in expressive activity, on some level, when they share files on BitTorrent, and their First Amendment rights must be considered before the Court allows the plaintiffs to override the putative defendants' anonymity."); *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) ("[T]he use of P2P file copying networks to download, distribute or make sound recordings available qualifies as speech entitled to First Amendment protection."). *See also, e.g., Interscope Records v. Does 1-14*, 558 F. Supp. 2d 1176, 1178 (D. Kan. 2008); *UMG Recordings, Inc. v. Does 1-4*, 64 Fed. R. Serv. 3d 305 (N.D. Cal. 2006). In *Sony*, the court concluded that a file sharer is "making a statement." *Sony*, 326 F. Supp. 2d at 564. In addition, a

file sharer is expressing himself through the selection of content and by making it available to others. *Id.* Although sharing creative content is not "political expression" entitled to the "broadest protection," a file sharer is still entitled to "some level of First Amendment protection." *Id.* (quoting *McIntyre*, 514 U.S. at 346).

Because the First Amendment protects anonymous speech and association, efforts to use the power of the courts to pierce anonymity are subject to a qualified privilege.[3]  Courts must "be vigilant . . . [and] guard against undue hindrances to . . . the exchange of ideas." *Buckley*, 525 U.S. at 192.  Just as in other cases in which litigants seek information that may be privileged, courts must consider the privilege before authorizing discovery. *See, e.g.*, *Sony*, 326 F. Supp. 2d at 563 ("Against the backdrop of First Amendment protection for anonymous speech, courts have held that civil subpoenas seeking information regarding anonymous individuals raise First Amendment concerns."); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) ("[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure.") (citing *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977)).

This Court, along with most courts that have considered the issue, has articulated a First Amendment test. *Sinclair*, 596 F. Supp. 2d at 132; *see also, e.g.*, *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756, 760-61 (N.J. Super. Ct. App. Div. 2001) (specifying a five-part balancing test for unmasking anonymous Internet speakers); *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005) (applying the *Dendrite* test); *Mobilisa, Inc. v. Doe,* 170 P.3d 712, 718-20 (Ariz. Ct. App. 2007) (same); *Doe v. Cahill,* 884 A.2d 451, 460 (Del. 2005) ("[B]efore a defamation plaintiff can obtain the identity of an anonymous defendant through the compulsory discovery process he must support his defamation claim with facts sufficient to defeat a summary judgment motion."); *Best W. Int'l, Inc. v. Doe,* CV-06-1537-PHX-DGC, 2006

---

[3]  A court order, even if granted to a private party, is state action and hence subject to constitutional limitations. *See, e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948).

WL 2091695, at *4-5 (D. Ariz. July 25, 2006) (applying the *Cahill* standard).  The common factor in these tests, including this Court's, is that a plaintiff must present evidence, not mere allegation or speculation, showing a sound basis for its claims against each defendant, *before* being permitted to issue subpoenas for the identity of an anonymous speaker.  *See Sinclair*, 596 F. Supp. 2d at 132.  Even in cases where "a file sharer's First Amendment right to anonymity is 'exceedingly small,'" that right "must be considered before the Court allows the plaintiffs to override the putative defendants' anonymity."  *Call of the Wild,* 770 F. Supp. 2d at 349 (quoting *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 8 (D.D.C. 2008)). The *Dendrite* case sets out a First Amendment test applicable in this context that has been adopted by courts in many jurisdictions. 775 A.2d at 760-61.

**B.    The First Amendment Requires That The Motions to Quash Subpoenas For Identification Filed Under Seal Be Accepted And Considered Under Seal.**

The December 21 Order did not consider the movants' First Amendment right to anonymous speech, leaving movants with no means of asserting that right without mooting it *ab initio*.  The Court cited to two criminal cases, *United States v. Christie,* 624 F.3d 558, 574 (3d Cir. 2010), and *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) in which the relevant issue was the propriety of a search under the Fourth Amendment.  Those cases concluded that because an individual shares her identity with her Internet Service Provider, she has no reasonable expectation of privacy in that information for purposes of a criminal search.  The cases did not address any speech issues.  But this case does not involve a search whose constitutional propriety is to be judged under the Fourth Amendment, and the legal analysis in the Order is therefore inapposite.  As described above, this Court and many others hold that those who express themselves on the Internet, including those accused of copyright infringement, have a qualified right to anonymity flowing from the First Amendment, not the Fourth.  The anonymous pamphleteer of *McIntyre* did not waive her right to anonymity simply because she hired a professional printer to reproduce her political pamphlets, 514 U.S. at 327, and the printer knew

who she was.[4]

The Order concludes that "[i]ndividuals who subscribe to the internet through ISPs" have effectively forfeited their right to anonymity. However, *all* communication on the Internet takes place through a third party service provider, and in almost all cases, users of residential broadband services have identified themselves to the service provider. Declaration of Seth Schoen ("Schoen Decl.") ¶ 35. Thus, the Order effectively disclaims First Amendment protection for the anonymous speech of a great many Internet users, contrary to this Court's precedent recognizing the existence of that very right. *See Sinclair*, 596 F. Supp. 2d at 132.[5] This sets a dangerous precedent, because the public increasingly uses the Internet and third-party service providers for a wide range of expressive activities.[6] A holding that the mere use of third-party ISPs waives any right to anonymity would dramatically contract this recognized constitutional right.

Moreover, the Order left putative defendants with no way to vindicate their First

___

[4] Although the Fourth Amendment is irrelevant here, we note that the doctrine that Fourth Amendment privacy rights are forfeited as soon as information is conveyed to a third party is open to question. *See United States v. Jones*, No. 10-1259, 565 U.S. ___, ___, 2012 WL 171117, at *10 (Jan. 23, 2012) (Sotomayor, J., concurring) ("[I]t may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties. . . . This approach is ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks.").

[5] The Order also cited to a copyright case, *Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577*, 736 F. Supp. 2d 212, 215 (D.D.C. 2010). That opinion contains the same legal error as the Order, in that it denies the existence of any First Amendment right to anonymous speech once an allegation of copyright infringement has been raised, contrary to the numerous authorities cited above.

[6] *See, e.g.,* Solarina Ho, *Do You Find Yourself Going Online More and More?*, Reuters.com (Nov. 5, 2007), http://www.reuters.com/article/2007/11/06/us-internet-poll-idUSN0559828420071106 (indicating 79% of adults, or 178 million, go online); Cecily Hall, *Consumers Find a Friend on the Internet*, Pew Internet (Aug. 19, 2009), http://pewinternet.org/Media-Mentions/2009/Consumers-Find-a-Friend-in-the-Internet.aspx (stating 69% of U.S. adults log onto the web to aid decision making). Indeed, Americans rely on the web for activities ranging from dating to finance. *See* Susannah Fox, *Online Banking 2005*, Pew Internet (Feb. 9, 2005), http://www.pewinternet.org/Reports/2005/Online-Banking-2005.aspx (stating a quarter of adults use online banking); Sharon Jayson, *Online Daters Report Positive Connections*, Pew Internet (Mar. 5, 2006) http://pewinternet.org/Media-Mentions/2006/Online-daters-report-positive-connections.aspx (finding 16 million people use online dating services).

Amendment right to anonymity.  The Court ruled that if movants who filed under seal

> wish to have the Court consider those motions, their motions will be filed on the
> public docket.  This means, of course, that plaintiff and any one else . . . will
> know who they are.  If, on the other hand, they would prefer not to have their
> identities disclosed at this point . . . they will have to withdraw their motions.

Order at 2.  Effectively, the Order gives movants the choice of allowing the Court to identify

them as a precondition to considering a motion to quash, or withdrawing such motions and

allowing the ISP that received the now-unchallenged subpoena to identify them.  As this Court

has recognized, once a movant's identity is revealed to the plaintiff, a motion seeking to preserve

the movant's anonymity is effectively moot.  *Achte/Neunte Boll Kino Beteiligungs Gmbh & Co.

v. Does 1-4,577*, 736 F. Supp. 2d 212, 215 (D.D.C. 2010) ("It must be noted that by filing their

motions to quash on the public record of the Court, Messrs. Anselm and Wright and Ms. Buel

provided the most critical information sought by the subpoenas-their names and addresses.  Their

motions to quash could be deemed moot, at least with regard to this information.").  Thus, the

Order forecloses even the possibility of invoking the required First Amendment analysis.  This is

inconsistent with the unquestioned existence of a right to anonymous speech, however qualified.

Putative defendants moving to quash a subpoena for their identities have a right to have their

motions heard and decided without divulging the very information they seek to protect.

Accordingly, EFF requests that the Court reconsider the Order.

## II.   HDP Has Not Established Personal Jurisdiction Over Most of the Defendants Nor A Good Faith Basis for Jurisdictional Discovery.

Jurisdictional defects in HDP's case provide another reason why the Court should

preserve defendants' anonymity.  As in other mass copyright suits filed in this Court in recent

years, HDP seeks to use this Court's authority to identify anonymous Internet users all over the

country without regard to whether those users have any meaningful connection to this District.

HDP has offered two theories for the Court's exercise of personal jurisdiction over 1,495

defendants: first, that "each Defendant may be found in this District" and second (in the

alternative) that "a substantial part of the acts of infringement complained of herein occurred in

this District" because the acts "occurred in every jurisdiction in the United States, including this one." Compl. ¶ 5.  HDP has not presented good cause for either of these theories, as required before jurisdictional discovery can issue.  In several recent cases with strikingly similar facts, this Court has required plaintiffs to show cause why jurisdictional discovery should be permitted. *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 36 (D.D.C. 2011); *Patrick Collins, Inc. v. Does 1-72*, No. 1:11-cv-00058-RMU-JMF, 2012 WL 177864 at *5-6 (D.D.C. Jan. 23, 2012) (Amicus's Request for Judicial Notice ("RJN") Ex. H).  The Court should do the same here, and quash the subpoenas if no sound basis for personal jurisdiction is forthcoming.

### A.  Jurisdictional Discovery Requires a Showing of Good Cause.

The Constitution imposes on every plaintiff the burden of establishing personal jurisdiction as a fundamental matter of fairness, recognizing that no defendant should be forced to have his rights and obligations determined in a jurisdiction with which he has had no contact. These requirements "give[] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *GTE New Media Services Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1350 (D.C. Cir. 2000) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

In a federal copyright action, personal jurisdiction over defendants must be established under District of Columbia law, as the Copyright Act provides no other basis for personal jurisdiction.  *Patrick Collins*, No. 1:11-cv-00058, at *3.  Under D.C. law, jurisdiction may be established by showing that the defendant is domiciled in the District, D.C. Code § 13-422 (2001), or that the defendant "acts directly or by an agent, as to a claim for relief arising from the person's … causing tortious injury in the District of Columbia by an act or omission in the District of Columbia."  D.C. Code § 13-423 (2001).

Although this Court permits discovery to gather jurisdictional facts, such discovery is granted only on a showing of good cause.  *Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1089-90 (D.C. Cir. 1998).  "Mere conjecture and speculation" are not a sufficient

showing to grant jurisdictional discovery. *Rundquist v. Vapiano SE,* 798 F. Supp. 2d 102, 119 (D.D.C. 2011). Accordingly, a party seeking discovery of facts supporting personal jurisdiction must establish that discovery will plausibly establish jurisdiction. *Savage v. Bioport, Inc.,* 460 F. Supp. 2d 55, 62-63 (D.D.C. 2006). This showing must be made for each defendant. *Nu Image*, 799 F. Supp. 2d at 34.

**B.      HDP Has Not Shown Good Cause To Expect That Defendants Were Domiciled in this District.**

As to the vast majority of the Doe Defendants, HDP has not shown that the subpoenas are likely to place defendants in the District of Columbia so as to establish personal jurisdiction by domicile. The only jurisdictional facts alleged by Plaintiff are a list of Internet Protocol (IP) addresses which HDP alleges were assigned to Defendants at a time when infringing activity was observed. Compl. ¶ 8. In fact, the IP addresses that Plaintiff included in its Exhibit A strongly suggest that the majority of the Defendants were located far from the District at the relevant times and do not reside in the district.

As this Court has recognized, publicly available geolocation services can identify the physical location of the user of an IP address to within a city or neighboring cities with reasonable accuracy. *Nu Image*, 799 F. Supp. 2d at 40-41. As explained in the accompanying affidavit prepared by EFF Senior Staff Technologist Seth Schoen, geolocation of the IP addresses in Exhibit A of HDP's Complaint reveals that the defendants were likely located all over the country, from California to Massachusetts. Schoen Decl. ¶ 26.

Thus, the available evidence – which was in HDP's possession before it filed its Complaint – strongly suggests that no more than a small fraction of the defendants were domiciled in the District of Columbia.

**C.      HDP Has Not Made a Plausible Showing that the Court Has Personal Jurisdiction Over the Defendants Based on Alleged Acts of Copyright Infringement Occurring in "Every Jurisdiction, Including This One."**

HDP alternatively asserts that the Court has personal jurisdiction over the Defendants because, when using the BitTorrent protocol, "every infringer is simultaneously stealing

copyrighted works from many ISPs in numerous jurisdictions around the country," and that "such unlawful distribution occurred in every jurisdiction in the United States, including this one." Compl. ¶¶ 4-5. The Court should not permit discovery on this basis either.

Under the District of Columbia long-arm statute, copyright claims are considered a species of tort claim for purposes of jurisdiction. *Nu Image*, 799 F. Supp 2d at 38. For such claims, personal jurisdiction over non-residents must be based on "tortious injury in the District of Columbia." *Id.*; D.C. Code § 13-423. The *situs* of an injury can be either where the plaintiff resides or the "location of the original events that caused the injury." *Nu Image,* 799 F. Supp. 2d at 39 (citing *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)). It is undisputed that HDP resides in Arizona. Compl. ¶ 7. Therefore, long-arm jurisdiction over defendants must be based on the location of the original events that caused the alleged infringement.

The BitTorrent protocol allows an individual to distribute a digital file of any kind to others over the Internet. *See generally* Schoen Decl. ¶¶7-12. The transfer of a file does not occur until one person posts a file on the Internet and another person requests a download of that file. As this Court has observed, when a person downloads a digital file using BitTorrent in violation of the copyright in that file, the "original event" causing the copyright infringement is the initiation of the download, which occurs at the accused infringer's location. *Nu Image*, 799 F. Supp. 2d at 39-40; *see also ALS Scan, Inc. v. Digital Service Consultants*, 293 F.3d 707, 714 (4th Cir. 2002) ("[A] person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received."). As explained above, HDP has no basis for asserting that the computers used by most of the defendants for the allegedly infringing downloads were located in the District of Columbia. As to these defendants, there is no indication that HDP's subpoenas were issued with the "good faith belief that such discovery will enable it to show that the court has personal jurisdiction over defendant[s]." *Caribbean Broad. Sys.,* 148 F.3d at 1090). Thus, HDP's proffer cannot, without more, provide a basis for HDP's subpoenas.

In several recent cases, this Court has denied permission to issue subpoenas for the

11

identities of alleged copyright infringers under facts that are strikingly similar to this case. *See Nu Image*, 799 F. Supp. 2d at 34; *People Pictures, LLC v. Group of Participants in Filesharing Swarm Identified by Hash: 43F4CFD05C115EE5887F680B0-CA73B1BA18B434A*, No. 11-cv-1968, 2011 WL 6758462 (D.D.C. Dec. 23, 2011); *Patrick Collins,* 2012 WL 177864.  In those cases, as in this one, the plaintiff sought to issue subpoenas to ISPs for the identities of numerous alleged infringers located throughout the country based only on their use of the BitTorrent protocol.  In each case, the Court declined to find a plausible basis for personal jurisdiction in the nature of the BitTorrent protocol and the mere conjecture that some intermediaries who facilitated a defendant's alleged infringing download may have been located in this District.  The same result should follow here.

**III.   Mass Joinder is Improper.**

Rule 20 of the Federal Rules of Civil Procedure ("Rule 20") allows for joinder of defendants when two conditions are met.  First, a plaintiff must demonstrate that its "right to relief is asserted against [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2).  Second, "any question of law or fact *common to all defendants* [must] arise in the action."  *Id*. (emphasis added).  Even if these requirements are satisfied, a "court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice . . . ." Fed. R. Civ. P. 20(b).

Here, HDP has not shown that joinder of 1,495 Doe Defendants is appropriate or otherwise complies with the Federal Rules of Civil Procedure.  *See IO Group, Inc. v. Does 1-435*, No. 10-4382, 2011 U.S. Dist. LEXIS 14123, at *19-20 (N.D. Cal. Feb. 3, 2011) ("filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for").

**A.      Federal Courts Are Increasingly Rejecting Attempts at Mass Joinder Such As HDP Attempts Here.**

HDP is not the first to improperly sue numerous unrelated defendants in a single copyright infringement lawsuit based on the coincidence that they allegedly infringed works owned by the same copyright holder.  Indeed, the current wave of mass copyright litigation began in this very district. *Achte/Neunte*, 736 F. Supp. 2d at 212.  EFF recognizes that judges in this district have chosen not to find misjoinder in these cases. *See, e.g., Voltage Pictures LLC v. Does 1-5,000,* 79 Fed. R. Serv. 3d 891 (D.D.C. 2011).  However, EFF urges the court to pay heed to the many decisions in courts around the country that recognize that these mass copyright suits may deny individual justice to those caught up in a plaintiff's indiscriminate dragnet. *See, e.g.*; *IO Group*, U.S. Dist. LEXIS 14123, at *2 (RJN, Ex. G) ("[T]he allegations that defendants simply used the same peer-to-peer network to download plaintiff's work . . . is insufficient to allow plaintiff to litigate against hundreds of different Doe defendants in one action."); *LFP Internet Group LLC v. Does 1-3,120*, No. 10-2095 (N.D. Tex. Feb. 10, 2011) (RJN, Ex. F) (quashing subpoenas, holding that Plaintiff did not show that the Defendants were "in any way related to each other, or that they acted in concert or as a group in their allegedly offending actions"); *West Coast Prods. v. Does 1-2010*, No. 10-0093 (N.D.W.Va. Dec. 16, 2010) (RJN, Ex. A).

These orders, disapproving of joining large numbers of defendants in a single action under Rule 20, follow a pattern starting as early as 2004.  *See, e.g.*, *BMG Music v. Does 1-203*, No. 04-0650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); *LaFace Records, LLC v. Does 1-38*, No. 07-0298, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008) (severing a lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same networks); *BMG Music v. Does 1-4*, No. 06-1579, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (severing, *sua sponte*, multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement); *UMG Recordings, Inc. v. Does 1-51*, No. 04-0704 (W.D. Tex. Nov. 17, 2004) (RJN, Ex. B) (dismissing without prejudice all but the

first of 254 defendants accused of unauthorized music file-sharing); *Twentieth Century Fox Film Corp. v. Does 1-12*, No. 04-4862 (N.D. Cal. Nov. 16, 2004) (RJN, Ex. C) (permitting discovery to identify first of twelve Doe defendants but staying case against remaining Does until plaintiff could demonstrate proper joinder).

### B.   Plaintiff Has Not Established a Concert of Action Among Defendants.

Persons "may be joined in one action as defendants if any right to relief is asserted . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2). "The first prong, the 'same transaction' requirement, refers to similarity in the factual background of a claim." *Coughlin v. Rogers,* 130 F.3d 1348, 1350 (9th Cir. 1997). The "same transaction" requirement is generally evaluated on a case-by-case basis. *See Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). "No hard and fast rules have been established under [Rule 20]." *Id.* "However, merely committing the same type of violation in the same way does not link defendants together for the purposes of joinder." *LaFace Records*, 2008 WL 544992, at *2.

The Complaint alleges that the various Doe Defendants infringed HDP's work over a period of over three months, from May to August 2011. Compl., Ex. A. HDP offers no explanation for how these different alleged infringers could have worked in concert when the alleged infringement occurred during entirely separate time frames. Schoen Decl. ¶¶ 10-17. In fact, HDP fails to connect any two putative Defendants, alleging only that they committed the same type of violation in the same way. *See generally id.* (explaining BitTorrent protocols and addressing likelihood of relationship between particular Defendants based on use of BitTorrent). As in *LFP Internet Group*, "the copyright infringement claim against each Defendant is based on the individual acts of each Defendant," not on a common transaction or occurrence. No. 10-2095, at 3-4 (RJN, Ex. F) (finding "that Defendants' alleged use of the BitTorrent software system to commit copyright infringement is, without more, insufficient for permissive joinder under Rule 20").

The same is true even where, as here, a plaintiff alleges infringement of the same

copyright work.  Order Severing Doe Defs. and Dismissing Claims 4, *Pacific Century Int'l, Ltd. v. Does 1-101*, No. 11-2533, 2011 WL 2690142, at *3 (N.D. Cal. July 8, 2011) ("That BitTorrent users have downloaded the same copyrighted work does not, therefore, evidence that they have acted together to obtain it.").  In *Pacific Century,* Magistrate Judge Ryu explained:

> However, Plaintiff glosses over the fact that BitTorrent users may upload different initial files of a given work, which results in the creation of distinct swarms.  *See* Lin Ye *et al.*, *A Measurement Study on BitTorrent System,* 3 Int'l J. Comm, Network & Sys. Sci 916, 916 (2000); *see also* Ankur Patel, Comment, *BitTorrent Beware: Legitimizing BitTorrent Against Secondary Copyright Liability,* 10 Appalachian J.L. 117, 119 (2011). . . . [For example], a second initial "seeder" may not enjoy television shows in low definition and instead decide to upload a high definition file of the same episode for distribution.  Notably, because of the differences between the first, low definition file and the second, high definition file, the participants in the first swarm would not interact with those in the second swarm.

*Id*. (internal citations omitted).

In sum, on the facts alleged HDP cannot satisfy the first prong of the standard for joinder under Rule 20.

### C.      Plaintiff Has Not Shown a Question of Law or Fact in Common to All Defendants.

Rule 20's second requirement is that a case will present a "question of law or fact common to all defendants . . . ."  Fed. R. Civ. P. 20(a)(2)(B).  The "mere fact that all [of a plaintiff's] claims arise under the same general law does not necessarily establish a common question of law or fact."  *Coughlin*, 130 F.3d at 1351.  "Claims 'involving different legal issues, standards, and procedures' do not involve common factual or legal questions."  *Washington v. Sandoval*, No. 10-0250, 2011 U.S. Dist. LEXIS 43377, at *4 (N.D. Cal. Apr. 19, 2011) (quoting *Coughlin*, 130 F.3d at 1351).

HDP's allegations do not meet Rule 20's standard. There is no question that a wide range of factual circumstances and legal defenses will necessarily arise out of a pool of more than 4,000 defendants.  Further, "IP subscribers are not necessarily copyright infringers." *VPR Internationale v. Does 1-1017*, No. 11-2068, at 2 (C.D. Ill. Apr. 29, 2011) (RJN, Ex. D). Thus, HDP will need to show that each individual defendant actually infringed its work.  Each of those

15

individuals will have unique factual circumstances, and therefore may have unique legal defenses.  As one court noted:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works.  John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . .  Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

*BMG Music*, 2004 WL 953888, at *1; *see also LFP Internet Group LLC*, No. 10-2095, at 4 (RJN, Ex. F) (finding joinder improper in mass copyright case "because each Defendant will also likely have a different defense").

### D.     Mass Joinder Will Unfairly Prejudice Defendants.

Even if a plaintiff meets the requirements for permissive joinder under Rule 20(a), courts have broad discretion to refuse joinder or to sever a case in order "to protect a party against embarrassment, delay, expense, or other prejudice . . . ."  Fed. R. Civ. P. 20(b); *see also Coleman v. Quaker Oats*, 232 F.3d 1271, 1296 (9th Cir. 2000) (explaining that permissive joinder must "comport with the principles of fundamental fairness").

The Court should exercise that discretion and sever the Doe Defendants.  Of course, joining thousands of unrelated defendants in one lawsuit will make litigation less expensive, as it allows a plaintiff to avoid the separate filing fees required for individual cases and enable its counsel to avoid travel.  But cost-efficiency does not justify ignoring well-established joinder principles.[7]  Moreover, it is highly unlikely that joinder would lead to *judicial* economies; quite the contrary.  *See Nu Image,* 799 F. Supp. 2d at 42 ("It makes more sense for Plaintiff to bring its case against those John Does in the court where they have a good faith belief . . . the case can actually be prosecuted, . . . [otherwise,] the third-party discovery . . . would take several years to complete.  This delay would be prejudicial to the defendants residing in the District of Columbia,

---

[7] Other courts considering joinder in mass copyright infringement cases have favored individual fairness over efficiency.  *See, e.g.*, General Order, *UMG Recordings, Inc. v. Does 1-51*, No. 04-0704 (W.D. Tex. Nov. 17, 2004) (RJN, Ex. B) (ordering severance of 254 defendants in four cases, noting that "filing fees for the recent four cases totaled $600, whereas the filing fees for 254 separate cases would have been $38,100").

and it presents multiple case management problems for the Court."). Here, joinder raises serious questions of individual fairness and individual justice, not to mention procedural headaches for the court that will not result in judicial economy. The Court should sever the Defendants and drop Does 2- 1,995 from the case. *See* Fed. R. Civ. P. 21.

## CONCLUSION

Those who communicate on the Internet, including those whose communications are alleged to infringe copyright, have a presumptive constitutional right to anonymity that the Court should not ignore. And while a plaintiff has the right to seek legal redress for alleged copyright infringement, it must follow the basic procedures and due process requirements applicable to all civil litigation. Failure to abide by these procedures is not only contrary to law, it puts the anonymous Defendants at a disadvantage where they will likely find settlement economically more feasible than litigation in a foreign jurisdiction, even though they may have committed no unlawful act or may otherwise have meritorious defenses.

EFF therefore respectfully urges this Court to stay the December 21 Order, maintain the instant motions to quash under seal. The Court should also quash all of HDP's outstanding subpoenas, and stay discovery, because the Court lacks personal jurisdiction over the majority of the 1,495 defendants, the defendants are improperly joined, and HDP did not meet the requirements of the First Amendment designed to protect anonymous speech. HDP should be required to correct these deficiencies before proceeding.

Dated: January 29, 2012                          ELECTRONIC FRONTIER FOUNDATION

                                 _____/s/ Mitchell L. Stoltz_____
                                 MITCHELL L. STOLTZ (DC Bar No. 978149)
                                 *mitch@eff.org*
                                 CORYNNE MCSHERRY
                                 *corynne@eff.org*
                                 JULIE P. SAMUELS
                                 *julie@eff.org*
                                 ELECTRONIC FRONTIER FOUNDATION
                                 454 Shotwell Street
                                 San Francisco, CA 94110
                                 *Attorneys for Amicus Curiae*

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 30, 2012, I caused a true copy of the foregoing to be served upon the following individuals by U.S. First Class Mail, postage prepaid:

Roberto Escobar
835 W. Warner Road, #101-467
Gilbert, AZ  07109

Kevin Berry
830 Main Street, Unit G
Belleville, NJ  07109

Daniel M. Kelly, Esq.
FRATAR, KERN & KELLY, LLP
1441 Main Street, Suite 630
Springfield, MN  01103

Gretchen Martin
8545 London Bridge Way
Lutherville, Maryland  21093

_____/s/ Mitchell L. Stoltz_____
MITCHELL L. STOLTZ