## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**HARD DRIVE PRODUCTIONS, INC.,**

      Plaintiff,

v.

**DOES 1-1,495,**

      Defendants.

Case No. 1:11-cv-01741-JDB

District Judge: Hon. John D. Bates

Magistrate Judge: Hon. John M. Facciola

---

Paul A. Duffy
Law Offices of Paul Duffy
Counsel for Plaintiff
2 N. LaSalle St., 13th Floor
Chicago, IL 60602
Ph: (312) 952-6136
F: (312) 346-8434
pduffy@pduffygroup.com

Doe Defendant 68.40.186.122
a/k/a Ketti Augusztiny, M.D.
314 Second St.
Ann Arbor, MI 48103
Ph: (510) 541-5610

*Appearing Pro Se*

---

## *FILED UNDER SEAL*

### *PRO SE* MOTION TO SEVER AND TO QUASH
### SUBPOENA BY DOE DEFENDANT 68.40.186.122

Doe Defendant having IP Address 68.40.186.122 ("Jane Doe") states the following for her *Pro Se* Motion to Sever Claims Pursuant to Fed. R. Civ. P. 21 and to Quash Subpoena Pursuant to Fed. R. Civ. P. 45:

1.     Plaintiff Hard Drive Productions, Inc. ("Plaintiff") filed this lawsuit against 1,495 Doe Defendants on September 27, 2011, identified by IP address, claiming copyright infringement in relation to Defendants' alleged distribution through a BitTorrent protocol of an adult video produced by Plaintiff.



RECEIVED
Mail Room

NOV 2 1

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

2.     Plaintiff obtained an order for expedited discovery and, on or about October 5, 2011, served a subpoena (the "Subpoena") on Comcast Cable Holdings, LLC, requesting identifying information regarding the persons whose IP addresses were listed in the attachment to the subpoena. (A copy of the Subpoena is attached as **Exhibit 1**). Jane Doe's IP address is included in the list attached to the Subpoena. The Subpoena sought production of the requested information on or before November 26, 2011.

3.     On November 2, 2011, the Court entered an order extending the deadline for filing motions to quash to November 23, 2011. (*See* Docket No. 6).

4.     Jane Doe hereby moves to sever the claims against her from the claims asserted against the other Doe Defendants pursuant to Fed. R. Civ. P. 21. and to quash the Subpoena pursuant to Fed. R. Civ. P. 45.

5.     As explained more fully in the accompanying brief, severance of the claims and quashing of the subpoena is warranted because Plaintiff's joinder of the Doe Defendants in a single lawsuit is improper under Fed. R. Civ. P. 20(a), as several courts have concluded in similar BitTorrent copyright infringement cases. In two recent cases involving lawsuits brought by Plaintiff, the District Court for the Northern District of California and the Eastern District of Virginia determining that joinder in such cases did not comport with the requirements and intent of Rule 20 and, therefore, that severance was warranted under Fed. R. Civ. P. 21. (*See* **Exhibit 2**, Order Granting Doe 24.5.180.56's Motion to Quash dated August 23, 2011, *Hard Drive Productions, Inc. v. Does 1-188*, N.D. Cal. Case No. C-11-01566 JCS; **Exhibit 3**, Opinion and Order dated October 17, 2011, *Hard Drive Productions, Inc. v. John Does 1-30*, E.D. Va. Case No. 11-cv-345). Jane Does urges the Court to adopt the reasoning employed by these courts and, accordingly, to grant the relief requested in this motion.

6.     Furthermore, Jane Doe maintains that this Court does not have personal jurisdiction over her.  She has absolutely no ties to or contacts with the District of Columbia that would support either general or limited jurisdiction over her.  Should she ever be served with the summons and complaint in this matter, she intends to file a motion to dismiss pursuant to Rule 12(b)(2).  Her appearance in this matter is solely for the purpose of challenging the Subpoena and seeking severance.   She neither waives nor compromises any challenge to personal jurisdiction, which she expressly reserves.

WHEREFORE, Jane Doe requests that the Court enter an order (a) granting this motion, (b) quashing the Subpoena, (c) severing the claims against her from those asserted against the other Doe Defendants, and (d) granting such other relief as the Court deems appropriate.

Date:  November 18, 2011                          Respectfully submitted,

                                                 Ketti Augusztiny, M.D.
                                                 Doe Defendant 68.40.186.122
                                                 *Appearing Pro Se*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**HARD DRIVE PRODUCTIONS, INC.,**

       Plaintiff,

v.

**DOES 1-1,495,**

       Defendants.

Case No. 1:11-cv-01741-JDB

District Judge: Hon. John D. Bates

Paul A. Duffy
Law Offices of Paul Duffy
Counsel for Plaintiff
2 N. LaSalle St., 13th Floor
Chicago, IL 60602
Ph: (312) 952-6136
F: (312) 346-8434
pduffy@pduffygroup.com

Doe Defendant 68.40.186.122
Ketti Augusztiny, M.D.
314 Second St.
Ann Arbor, MI 48103
Ph: (510) 541-5610

*Appearing Pro Se*

## FILED UNDER SEAL

### BRIEF IN SUPPORT OF *PRO SE* MOTION TO SEVER
### AND TO QUASH SUBPOENA BY DOE DEFENDANT 68.40.186.122

## INTRODUCTION

This is yet another hit-and-run lawsuit orchestrated by a lawyer, John Steele, who has become notorious for his, as several courts have noted, "shoot first and identify his targets later" litigation strategy. (*See* **Exhibit 4**, Mem. Order, *Boy Racer, Inc. v. Does 1-22*, N.D. Ill. Case No. 11-C-2984.[1]  Following a well-worn pattern, Plaintiff filed this copyright infringement lawsuit against 1,495 Doe Defendants identified only by IP addresses, and then sought and obtained permission to serve expedited discovery in an effort to identify the persons associated with the IP addresses.  Once this information is obtained, the next step is, typically, to contact these persons, level threats, and then attempt to extract a highly inflated payment from them to resolve the case, regardless of whether there is any evidence that the person associated with the IP address did, in fact, engage in any infringing activities.  Plaintiff served the subpoena at issue in this litigation undoubtedly looking to employ this same strategy.  If successful, this strategy could potentially yield millions of dollars to Plaintiff, with minimal effort and expense, for the alleged infringement of an adult film whose gross revenues are likely an infinitesimal fraction of the amount Plaintiff could gain through this questionable use of the court system.

Notwithstanding the dubious intentions of Plaintiff and its attorneys, the subpoena served on Jane Doe's internet service provider in this case should be quashed pursuant to Fed. R. Civ. P. 45, and the claims against her severed pursuant to Fed. R. Civ. P. 21, because the joinder in a single action of nearly 1,500 Doe Defendants was, under the circumstances of this case,

---

[1]  Although Steele is not official counsel of record, the subpoena at issue was issued over his name with the requested information to be returnable to his law firm. (*See* **Exhibit 1**.)  Given the reputation he has been developing, his desire to act as "ghost counsel" is understandable.

improper, as the case law demonstrates. Plaintiff cannot establish that the alleged infringement arose out of the same transaction or occurrence or series of transactions or occurrences, as is required for permissive joinder under Fed. R. Civ. P. 20(a). Further, the joinder of this many defendants in one case would be highly prejudicial to each of them and would cause a logistical nightmare that would create insurmountable problems in the litigation of the case.

For these reasons, Jane Doe requests that the Court enter an severing the claims against her from the claims asserted against the other Doe Defendants and quashing the Subpoena.

## FACTUAL BACKGROUND

Jane Doe is a 27-year old physician, practicing full-time in a family medicine clinic. She is engaged to be married. She does not view pornography and did not download the film in question. She has a wireless internet account for her home, which is an unsecured line, accessible from any of the numerous homes located in the densely populated neighborhood in which she resides.

Plaintiff filed its Complaint for Copyright Infringement (the "Complaint," Docket No. 1) against the Doe Defendants on September 27, 2011, alleging that they "unlawfully distributed" an adult film owned by Plaintiff, entitled "*Amateur Allure – Maelynn*," over the internet through the use of a Bit Torrent protocol. This type of protocol, known as a "Peer to Peer," or P2P, protocol, is a mechanism whereby users can download files from, and upload files to, other users over the internet:

> The BitTorrent protocol can be used to reduce the server and network impact of distributing large files. Rather than downloading a file from a single source server, the BitTorrent protocol allows users to join a "swarm" of hosts to download and upload from each other simultaneously. The protocol is an alternative to the older single source, multiple mirror sources technique for distributing data, and can work over networks with lower bandwidth so many small computers, like mobile phones, are able to efficiently distribute files to many recipients.

6

(*See* http://en.wikipedia.org/wiki/BitTorrent_(protocol)).

According to the attachment to Plaintiff's Complaint, the 1,495 Doe Defendants named in this case downloaded and/or provided others the ability to upload "*Amateur Allure – Maelynn*" at various times ranging from late May, 2011, to late September, 2011. (Docket No. 1, Exhibit A). Jane Doe's IP Address is alleged to have been involved in the uploading or downloading of this video on May 29, 2011. Plaintiff has, of course, no idea whether any of the Doe Defendants actually engaged in any distribution of the movie, as anyone who has access to the IP address could be the actual participant in the BitTorrent protocol.

On September 30, 2011, Plaintiff filed its Motion for Leave to Take Discovery Prior to Rule 26(f) Conference (Docket No. 3), requesting leave to serve subpoenas on the Doe Defendants' ISPs. The Court entered an order granting the motion on October 4, 2011. (Docket No. 4). Pursuant to the Court's order, on or about October 5, 2011, Plaintiff, through attorney John Steele, served a subpoena (the "Subpoena") on Comcast Cable Holdings, LLC ("Comcast"), asking it to produce on or before November 26, 2011 identifying information for the persons associated with the IP addresses set forth in the exhibit to the Subpoena. Comcast subsequently provided Jane Doe with written notice of the Subpoena.

Thereafter, three Doe Defendants filed motions to quash or modify the subpoenas authorized under the October 4 order. On November 2, 2011, the Court entered an order (Docket No. 6) denying leave to file the motions based upon a lack of compliance with D.D.C. Civ. R. 5.1. However, the Court extended the deadline for filing motions to quash to November 23, 2011. On November 10, 2011, the Court entered an order (Docket No. 7), clarifying that "Defendants wishing to file Motions to Quash (and/or Motions to Sever) do not need to follow

the procedures in the Local Rules for filing under seal" and providing a protocol for the filing of motions.

In response to the Subpoena served on Comcast, Jane Doe brings this motion pursuant to Fed. R. Civ. P 21 and 45 to sever the claims brought against her and to quash the Subpoena. For the reasons discussed below, this relief should be granted because the joinder of all of the Doe Defendants in this lawsuit was improper under Fed. R. Civ. P. 20(a) and, if allowed, would result in substantial prejudice to Jane Doe and the other Doe Defendants and to the administration of justice in this matter.

## ANALYSIS

Fed. R. Civ. P 20 provides the requirements for permissive joinder of parties, stating, in relevant part, that a party may join more than one defendant in an action if "any right to relief is asserted against them...with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(A)(2)(a). Where a plaintiff has improperly joined defendants, Fed. R. Civ. P. 21 authorizes a court to "add or drop a party" or "sever any claim against a party."

Moreover, "permissive joinder rests with the sound discretion of [the court]." *A-1 Cigarette Vending, Inc. v. U.S.*, 40 Fed. Cl. 643, 646 (1988)(citing cases). Therefore, even where the threshold requirements of Rule 20(a) are met, a court "must examine whether permissive joinder would 'comport with...principles of fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Company*, 232 F.3d 1271, 1296 (9th Cir. 2000)(citation omitted); *see also, e.g., Stark v. Indpendent School Dist. No. 640*, 163 F.R.D. 557, 563-64 (D. Minn. 1995)("Rule 20 does not end with conclusions concerning the particular requirements of that Rule... [T]he language of Rule 20 states that if the criteria set forth in the Rule are met, the

party 'may' be added, not that it 'shall' be added"). If joinder would not comport with such principles or would result in prejudice to the defendants, the court may exercise its discretion to deny joinder. *Coleman*, 232 F.3d at 1296.

Application of these standards compels the conclusion that the claims against Jane Doe should be severed and the Subpoena quashed.

## I.   The Case Law Supports Severance in this Matter

### A.   *Hard Drive Productions, Inc. v. Does 1-188*

Several courts faced with substantially similar facts as those present in this case have recently concluded that the joinder of multiple defendants in BitTorrent cases does not comport with the requirements of Rule 20. For instance, in *Hard Drive Productions, Inc. v. Does 1-188*, N.D. Cal. Case No. C-11-01566-JCS, the Plaintiff in this case filed a lawsuit against 188 Doe defendants, asserting copyright infringement claims based upon the alleged reproduction and distribution of its copyrighted video "*Amateur Allure – Erin*." Just as in this case, Plaintiff requested, and obtained, leave to serve subpoenas on the Doe defendants' internet service providers prior to the Fed. R. Civ. P. 26(f) conference. Several Doe defendants filed motions to quash. On August 23, 2011, the Court entered an order granting the motions, concluding that joinder was improper.

In a thorough opinion, the Court surveyed several cases addressing the issue of joinder of defendants in P2P file sharing cases, and concluded that the cases finding that such joinder was impermissible represented the better-reasoned approach. The Court emphasized that the relationship between the alleged BitTorrent participants was too tenuous to satisfy the requirements of Rule 20:

> Does 1-188 did not participate in the same transaction or occurrence, or the same series of transactions or occurrences. Under the BitTorrent Protocol, it is not

> necessary that each of the Does 1-188 participated in or contributed to the downloading of each other's copies of the work at issue – or even participated in or contributed to the downloading by any of the Does 1-188. Any "pieces" of the work copied or uploaded by any individual Doe may have gone to any other Doe *or to any of the potentially thousands who participated in a given swarm*. The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country of across the world.

*Hard Drive v. Does 1-188*, **Exhibit 2**, p. 18. The Court also noted that Plaintiff's submissions

belied its assertion that Does 1-188 were part of a single "swarm," because, among other things,

the exhibit attached to Plaintiff's complaint demonstrated that "the activity of the different IP

addresses occurred on different days and times over a two-week period." *Id.* The Court thus

concluded that "joinder of the Doe Defendants in this action does not satisfy Rule 20(a). *Id.*

The Court, citing a number of factors, also determined that even if Rule 20(a) had been

satisfied, discretionary severance was appropriate under Fed. R. Civ. P. 21 in the interests of

avoiding "prejudice and unfairness to Defendants, and in the interest of justice":

> [T]he Court finds that permissive joinder of the Doe Defendants does not comport with the "notions of fundamental fairness," and that it will likely cause prejudice to the putative defendants.... The joinder would result in numerous hurdles that would prejudice the defendants. For example, even though they may be separated by many miles and have nothing in common other than the use of BitTorrent, each defendant must serve each other will all pleadings – a significant burden when, as here, many of the defendant will be appearing *pro se* and may not be e-filers. Each defendant would have the right to be at each other defendant's deposition – creating a thoroughly unmanageable situation. The courtroom proceedings would be unworkable – with each of the 188 Does having the opportunity to be present and address the court at each case management conference or other event. Finally, each defendant's defense would, in effect, require a mini trial. These burdens completely defeat any supposed benefit from the joinder of all Does in this case, and would substantially prejudice defendants and the administration of justice.

*Id.* at p. 19. The Court also added that Plaintiff's assertion that joinder satisfied the requirements

of Rule 20 was "speculative and conclusory." Thus, the Court determined that severance was

justified on multiple grounds.

### B.    *Hard Drive v. John Does 1-30*

The District Court for the Eastern District of Virginia reached the same conclusion in *Hard Drive Productions, Inc. v. John Does 1-30*, E.D. Va. Case No. 2:11-cv-345. There, Plaintiff filed suit against 30 Doe Defendants, alleging that they unlawfully distributed yet another installment of the "Amateur Allure" series, this time "*Amateur Allure – Zoe*", using a BitTorrent protocol. Following its typical *modus operandi*, Plaintiff sought, and obtained, an order permitting it to serve subpoenas on the ISPs prior to the Rule 26(f) conference. A John Doe defendant then filed a motion to sever.

The court, citing to the decision of the Northern District of California in *Hard Drive v. Does 1-188*, among others, granted the motion, concluding that joinder of the defendants was improper under Rule 20(a). The court agreed that "mere allegations that Doe Defendants used the same peer-to-peer network to copy and reproduce their videos is insufficient to meet the standards of joinder." *Hard Drive v. John Does 1-30*, **Exhibit 3**, p. 6. Accordingly, "[i]n the interest of fairness," the court exercised its discretion under Rule 21 and severed the claims against the John Doe defendants. In addition, the court ordered Plaintiff to show cause why the materials obtained through the subpoenas issued by Plaintiff should not be suppressed.

The court also took attorney John Steele to task for the tactics he had employed in the case and in similar cases pending in the Eastern District of Virginia:

> Doe Defendants in those cases indicated that Plaintiffs have contacted them directly, demanding compensation to end the litigation... This threatening behavior on behalf of Plaintiffs in the cases listed above is identical in nature to the threatening phone call made to Anonymous by John Steele on October 13, 2011 in the instant case before this Court. Notably, when any Doe Defendant in the cases above had filed a motion to sever, Plaintiffs have hastily and voluntarily dismissed that Doe Defendant as a party in the matter to avoid the issue being present to the Court for a resolution.

*Id.* at p. 6.  The court ordered Plaintiff's attorney of record to "advise the Court as to whether he is associated with John Steele, Esq., in any way in this case." *Id.* at p. 7.

### C.    The Claims Against Jane Doe Should be Severed and the Subpoena Quashed

The reasoning of the courts in the *Hard Drive* cases provides a compelling basis to sever the claims against Jane Doe and to quash the Subpoena.  Indeed, the facts here present an even more compelling case for severance.  In the Hard Drive cases, the courts found that the mere sharing of a video through a BitTorrent protocol was insufficient to establish that the alleged infringing conduct arose out of the same transaction or occurrence, or series of transactions or occurrences.  The Northern District of California reached this conclusion where only 188 Doe defendants were joined, and the Eastern District of Virginia reached this conclusion where only 30 Doe defendants were joined.  Here, Plaintiff has joined 1,495 defendants.  If joinder of a mere 30 defendants, in the one case, or 180, in the other, was improper because their conduct did not involved the same transaction(s) or occurrence(s), then Plaintiff's joinder of 1,495 defendants in this matter undoubtedly fails to satisfy the requirements of Rule 20(a).

Moreover, a significant factor in the Northern District of California's determination that the Doe defendants were not acting in concert was that "the activity of the different IP addresses occurred on different days and times *over a two-week period*." *Hard Drive v. Does 1-188*, **Exhibit 2**, p. 18.  Here, Exhibit A to the complaint indicates that the activity took place over a *four-month period*, from May through September of this year.  Combined with the large number of defendants in the case, this admission by Plaintiff effectively negates the possibility that the alleged unlawful activity involved the same the same transaction(s) or occurrence(s).  As the Northern District of California stated in *Boy Racer v. John Does 2-52*, N.D. Cal. Case No. 11-2834, at 4-5 (attached as **Exhibit 5**):

> [E]ven if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses "acted in concert" with all of the others. In fact, the nearly six-week span covering the activity associated with each of the addresses calls into question whether there was ever common activity linking the 51 addresses in this case. In this age of instant digital gratification, it is difficult to imagine, let alone believe, that an alleged infringer of the copyrighted work would patiently wait six weeks to collect the bits of work necessary to watch the work as a whole. At the very least, there is no proof that bits from each of these addresses were ever assembled into a single swarm. As the court previously explained, under this court's precedent regarding other file sharing protocols, merely infringing the same copyrighted work over this period is not enough.

If, as in *Boy Racer*, 51 IP addresses involving a six-week time frame did not provide a basis for joinder under Fed. R. Civ. P. 20(a), then there is certainly no basis for joinder in a case involving 1,495 IP addresses alleged to have been involved in a BitTorrent protocol that spanned a four-month time period. For these reasons, joinder under Fed. R. Civ. P. 20(a) is improper, and the claims against Jane Doe should be severed pursuant to Fed. R. Civ. P. 21.

Further, discretionary severance under Rule 21 is warranted under the circumstances of this case. In *Hard Drive v. Does 1-188*, the court concluded that discretionary severance was appropriate because litigation of all of the claims against all of the defendants in one proceeding would be a logistical nightmare and would result in prejudice to the defendants and to the administration of justice. Those difficulties would be amplified in this case due to the vastly greater number of defendants involved. If joinder of all 1,495 Doe Defendants is permitted here, the case would descend into a procedural and logistical morass that would tax the resources of the Court and of the defendants, and would significantly interfere with, and perhaps even eliminate, the defendants' ability to receive a fair trial. The proceedings would simply be a farce, and would play right into Plaintiff's hands, as many defendants—innocent or not—would likely give up and accede to Plaintiff's unwarranted demands rather than endure the cost and toil

of defending themselves in a lawsuit. Accordingly, severance is warranted regardless of whether the threshold requirements for joinder under Rule 20(a) are satisfied.

### D.   The Prior District of Columbia Cases Should Not be Followed

In *Hard Drive v. Does 1-188*, the court addressed, and rejected the reasoning of, two decisions issued by the United States District Court for the District of Columbia denying motions to dismiss based on improper joinder in similar BitTorrent cases. *See Call of the Wild Movie, LLC v. Smith*, 274 F.R.D. 334 (D.D.C. 2011, Beryl, J.); *Voltage Pictures, LLC v. Does 1-5,000*, 2011 WL 1807438 (D.D.C., Beryl, J). These cases should not be followed because they are distinguishable and because the *Hard Drive* cases discussed above are more consistent with the purposes of Rules 20 and 21 and the goals of judicial economy, avoidance of prejudice to the Doe Defendants, and avoidance of prejudice to the administration of justice.

Both of the District of Columbia cases involved allegations of copyright infringement through use of a BitTorrent protocol, and in both, motions to dismiss based on improper joinder were filed. The court was persuaded in both cases that the requirements for joinder under Rule 20(a) were met based on the allegations of the complaint and that it would be premature to sever the claims. The Court acknowledged the potential burden of proceeding with numerous defendants in one case, and indicated that severance might ultimately be necessary, but that benefits of joinder outweighed the harms in the early procedural posture of the cases. *Call of the Wild*, 274 F.R.D. at 340-44; *Voltage Pictures*, 2011 WL 1807438, at *4-8.

In those cases, unlike in *Hard Drive v. Does 1-188*, the court did not undertake a searching analysis of how a BitTorrent protocol works, and instead simply took the allegations of the complaint at face value as to the involvement of all of the defendants in the alleged distribution of the copyrighted work. Additionally, the court did not address the time period over

which the alleged activity occurred or whether there was any basis to conclude that the defendants were even part of a single "swarm." As *Hard Drive v. Does 1-188* demonstrates, a more searching inquiry into such matters is critical to the analysis of whether involvement in a given protocol can satisfy the "same transaction or occurrence test" of Fed. R. Civ. P. 20(a). Here 1,495 IP addresses were allegedly involved in the distribution of "*Amateur Allure – Maelynn*" over a four-month period. These facts render it virtually impossible that all of the Doe Defendants were involved with one another in the distribution of the video such that Rule 20's permissive joinder requirements would be satisfied. The *Call of the Wild* and *Voltage Pictures* cases do not adequately address this issue.

Moreover, recent decisions of the various courts holding that joinder was improper and severing the Defendants, post-date earlier decisions of District Columbia courts addressing these issues. As more and more courts are analyzing the issues in the proliferation of BitTorrent cases relating to pornographic films, the weight of authority is clearly shifting towards restricting the ability of Plaintiffs' counsel to engage in the scorched earth, blunderbuss approach to litigation upon which they have previously been "banking," in every sense of that word.

Further, Jane Does submits that the court in the D.C. cases did not give sufficient consideration to the procedural and logistical burdens the joinder of 1,495 defendants would impose on the Court and the defendants. As an example, it is inconceivable how the Court could conduct a Rule 16(f) conference, or any other conference, or how 1,495 defendants could confer with one another and Plaintiff's counsel to formulate and submit a Rule 26(f) joint discovery plan. Further, assuming that many of the defendants remained *pro se*, the financial burden on Jane Doe and the other Doe Defendants to prepare and serve copies of all of their filings on the other parties would be immense. These are but two examples of the many hardships that joinder

would present to the Court and the litigants. If joinder is allowed, the difficulties for all involved will be staggering, and nothing about that will change, regardless of whether a motion for severance is entertained now, or is entertained after the Doe Defendants have been identified and served.

*Call of the Wild* and *Voltage Pictures* are distinguishable on several grounds and should not be followed. The *Hard Drive* cases from the Northern District of California and the Eastern District of Virginia, both of which post-date *Call of the Wild* and *Voltage Pictures*, represent the sounder approach. Jane Doe urges this Court to adopt the reasoning set forth in the cited *Hard Drive* cases.

## CONCLUSION

As the appended decisions demonstrate, courts are, for good reason, growing increasingly weary of Mr. Steele's tactics. This type of "copyright trolling" strategy does not comport with the joinder requirements of Fed. R. Civ. P. 20(a) and places significant burdens on both the courts and the defendants who have been swept up in this scheme. It should not be permitted to continue. Here, the claims against Jane Doe should be severed pursuant to Fed. R. Civ. P. 21, and the Subpoena served in this matter quashed.

WHEREFORE, Jane Doe requests that the Court enter an order (a) granting this motion, (b) quashing the Subpoena, (c) severing the claims against her from those asserted against the other Doe Defendants, and (d) granting such other relief as the Court deems appropriate.

Date:  November 18, 2011                          Respectfully submitted,

                                      By:  _____
                                            Ketti Augusztiny, M.D.
                                            Doe Defendant 68.40.186.122
                                            *Appearing Pro Se*

I CERTIFY that on November _18_, 2011, I caused a copy of the foregoing motion and brief, redacted as to the Pro Se filer's identity, to be served on the following counsel of record by depositing it with the U.S. Postal Service via First Class mail:

Paul A. Duffy
Law Offices of Paul Duffy
Counsel for Plaintiff
2 N. LaSalle St., 13th Floor
Chicago, IL 60602

Date:  November _18_, 2011                                  _Gina M. Williams_
                                                            Gina M. Williams

1

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Illinois

| | | |
|---|---|---|
| HARD DRIVE PRODUCTIONS, INC. | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   1:11-CV-01741-JDB |
| DOES 1 - 1,495 | ) | |
| | ) | (If the action is pending in another district, state where: |
| _Defendant_ | ) | District of Columbia            ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Attn: Subpoena Compliance/Custodian of Records, Comcast Cable Holdings, LLC c/o C T Corporation System, 208 S LaSalle St Ste 814, Chicago IL 60604-1101

☒ _Production:_ YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of tl material: In accordance with the conditions in the attached order, provide the name, current (and permanent) addresses, telephone numbers, e-mail addresses and Media Access Control addresses of all persons whose IP addresses are listed in the attached spreadsheet. We will be please to provide data to you in the most efficient and cost effective format if you let us know what your preferred format is.

| Place: Steele Hansmeier PLLC | Date and Time: |
|---|---|
| 161 N Clark St Ste 3200 | |
| Chicago, IL 60601 | 11/26/2011 10:00 am |

☐ _Inspection of Premises:_ YOU ARE COMMANDED to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   10/05/2011

|  CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _Signature of Clerk or Deputy Clerk_ | | /s/ John Steele |
| | | _Attorney's signature_ |

The name, address, e-mail, and telephone number of the attorney representing _(name of party)_
HARD DRIVE PRODUCTIONS, INC.                              , who issues or requests this subpoena, are:
John Steele, Steele Hansmeier PLLC, 161 N Clark St Ste 3200, Chicago IL 60601
jlsteele@wefightpiracy.com; (312) 880 - 9160

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

(c) Protecting a Person Subject to a Subpoena.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by travelling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt. The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

HARD DRIVE PRODUCTIONS, INC.       )
                                   )
         Plaintiff,                )
                                   )
v.                                 )        Case No. 1:11-cv-01741-JDB
                                   )
DOES 1 – 1,495                     )
                                   )
         Defendants.               )
_____)

## ORDER

Hard Drive Productions, Inc. ("Hard Drive") has filed a complaint for copyright
infringement against a number of unidentified defendants who have allegedly copied or
distributed Hard Drive's copyrighted work "Amateur Allure – Maelynn." Currently before the
Court is [3] Hard Drive's motion for expedited discovery. Specifically, Hard Drive seeks to
serve Rule 45 subpoenas on several non-party Internet Service Providers ("ISPs") prior to a Rule
26(f) conference. It hopes this discovery will allow it to determine the identities of the
unidentified defendants.

According to Hard Drive's complaint, each unidentified defendant used a "torrent" peer-
to-peer system to download Hard Drive's copyrighted work, distribute that work to others, and/or
make the copyrighted work available for further distribution to others. Compl. ¶¶ 3, 6. Although
it does not know the defendants' names, Hard Drive has identified each defendant by a unique
internet protocol ("IP") address assigned by the ISP to that defendant on the date and at the time
of the allegedly infringing activity. Compl. ¶ 8.

Without the information sought by this motion, Hard Drive argues, its suit cannot
proceed. Accordingly, the Court will grant Hard Drive's motion for expedited discovery. Hard
Drive may serve Rule 45 subpoenas on the ISPs that it has identified as possessing information

1

relating to the unidentified defendants' IP addresses. See Compl. Ex. A. These subpoenas may seek information sufficient to identify each defendant, including name, address, telephone number, email address, and media access control address. If an ISP cannot itself identify one or more of the unidentified defendants, but does identify another ISP as the entity that provided online services and/or network access to such defendants, Hard Drive may serve a subpoena on the latter ISP as well.

Any ISP that receives a subpoena shall not assess any charge to Hard Drive (1) before it provides the information requested in the Rule 45 subpoena, or (2) for IP addresses which are not controlled by the ISP, or (3) for the ISP's internal costs to notify its customers. However, any ISP that receives a subpoena may elect to charge Hard Drive for the costs of producing the pertinent information. In its request for costs, the ISP shall provide Hard Drive with a billing summary and supporting documentation.

Any information disclosed to Hard Drive in response to the Rule 45 subpoenas may be used by Hard Drive solely for the purpose of protecting its rights as set forth in the Complaint, and Hard Drive may not publicly disclose the names of the defendants. If and when an ISP is served with a subpoena, the ISP shall give written notice, which may include email notice, to the subscribers in question within five business days. If an ISP and/or any defendant wishes to move to quash the subpoena, the party must do so before the return date of the subpoena, which shall be thirty (30) days from the subpoena's date of service. The ISP shall preserve any subpoenaed information pending the resolution of any timely filed motion to quash. Hard Drive shall serve each ISP with a copy of this Order along with its subpoena.

Accordingly, it is hereby

ORDERED that [3] plaintiff's motion for expedited discovery is GRANTED.

2

SO ORDERED.

_____/s/_____
JOHN D. BATES
United States District Judge

Date: October 4, 2011

3

| | |
|---|---|
| 67.167.229.183 | 2011-07-09 08:10:02 AM |
| 67.168.52.96 | 2011-06-15 10:36:37 AM |
| 67.168.8.84 | 2011-06-24 08:11:33 AM |
| 67.170.60.156 | 2011-07-14 05:10:00 AM |
| 67.170.8.75 | 2011-06-09 12:46:23 PM |
| 67.171.200.241 | 2011-06-10 09:49:48 PM |
| 67.174.221.227 | 2011-08-03 06:06:07 PM |
| 67.176.90.167 | 2011-05-28 10:37:46 PM |
| 67.180.217.221 | 2011-09-23 01:30:50 AM |
| 67.181.43.116 | 2011-05-29 02:46:24 AM |
| 67.182.175.98 | 2011-07-02 03:27:26 PM |
| 67.183.146.76 | 2011-06-30 01:57:44 AM |
| 67.183.198.233 | 2011-07-14 05:48:23 PM |
| 67.184.17.32 | 2011-06-26 10:42:53 PM |
| 67.184.49.134 | 2011-07-05 04:36:14 AM |
| 67.185.104.171 | 2011-08-07 12:40:12 PM |
| 67.185.67.46 | 2011-09-06 02:19:07 PM |
| 67.186.145.88 | 2011-06-25 03:54:08 AM |
| 67.186.15.187 | 2011-06-04 05:56:38 PM |
| 67.186.242.87 | 2011-08-08 03:41:09 AM |
| 67.187.83.142 | 2011-05-28 05:04:15 AM |
| 67.189.27.168 | 2011-06-07 05:19:24 PM |
| 67.190.172.55 | 2011-06-25 10:40:11 PM |
| 67.190.183.245 | 2011-06-15 07:43:33 AM |
| 67.190.85.52 | 2011-05-29 09:30:05 AM |
| 67.191.55.182 | 2011-07-04 08:02:30 PM |
| 67.191.93.179 | 2011-06-01 06:49:49 AM |
| 68.33.33.198 | 2011-07-14 02:35:24 AM |
| 68.34.4.158 | 2011-08-17 06:18:10 AM |
| 68.34.83.188 | 2011-06-01 02:59:12 AM |
| 68.35.132.252 | 2011-07-02 10:29:09 PM |
| 68.35.170.241 | 2011-05-28 03:08:42 AM |
| 68.35.76.69 | 2011-07-25 03:36:04 AM |
| 68.36.86.79 | 2011-07-27 01:29:48 AM |
| 68.37.1.148 | 2011-06-09 05:00:11 AM |
| 68.37.196.125 | 2011-05-28 01:20:29 PM |
| 68.37.252.235 | 2011-06-15 05:15:57 AM |
| | |
| 68.40.189.228 | 2011-08-21 04:34:47 PM |
| 68.41.133.141 | 2011-05-28 04:48:37 PM |
| 68.41.155.29 | 2011-08-17 06:30:25 PM |
| 68.42.152.223 | 2011-07-01 01:29:12 PM |
| 68.42.26.248 | 2011-06-17 06:09:54 PM |
| 68.43.109.68 | 2011-07-21 07:15:28 AM |
| 68.43.147.162 | 2011-06-20 07:38:07 PM |
| 68.43.198.139 | 2011-07-09 11:50:31 PM |
| 68.44.27.174 | 2011-06-12 02:21:09 AM |

68. 40. 186. 122
2011-05-29 01:04:22 AM

**2**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HARD DRIVE PRODUCTIONS, INC.,

         Plaintiff,

         v.

DOES 1-188,

         Defendants.

_____/

Case No. C-11-01566 JCS

**ORDER GRANTING DOE 24.5.180.56'S MOTION TO QUASH [Docket Nos. 13, 19, 20, 21]**

## I.    INTRODUCTION

On June 21, 2011, Defendant John Doe at IP address 24.5.180.56 ("Doe 24.5.180.56") filed a Motion to Quash this Court's Order Granting Hard Drive Production's Application for Leave to Take Discovery Prior to Rule 26(f) Conference with Extended Joinder Discussion. Docket No. 19 (hereinafter, "June 21 Mot. to Quash"). The Defendant's Motion is GRANTED. Further, for the reasons stated in this order, the Court also GRANTS the other motions to quash pending in this action that is, Docket Numbers 13, 20 and 21. For the reasons stated, the Court also quashes all subpoenas seeking information regarding all defendants except Doe at IP address 173.55.54.77 (the "remaining Doe Defendant"), and severs and dismisses without prejudice all claims against all Does except the remaining Doe Defendant.

## II.    BACKGROUND

### A.    Complaint

Plaintiff filed this copyright infringement suit on March 31, 2011 against 188 separate Doe Defendants. Docket. No. 1 ("Complaint"). In the Complaint, Plaintiff alleges that Doe Defendants illegally reproduced and distributed Plaintiff's copyrighted video "Amateur Allure – Erin" ("the Work"), thereby violating the United States Copyright Act, 17 U.S.C. §§ 101-1332. Complaint at ¶¶ 7, 25-31. Plaintiff alleges that it used geolocation technology to trace the Internet Protocol ("IP") addresses of each Doe Defendant, thereby establishing that all Doe Defendants either reside or have

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  committed copyright infringement in the State of California. *Id.* at ¶ 3. According to Plaintiff, all

2  Doe Defendants participated in a "peer-to-peer" ("P2P") network in which the Defendants

3  exchanged the Work using an internet file sharing method known as BitTorrent (hereinafter,

4  "BitTorrent protocol" or "BitTorrent technology"), thereby taking part in a civil conspiracy to

5  commit copyright infringement. *Id.* at ¶ 32-39. Plaintiff explains that

6     . . . the BitTorrent protocol is a decentralized method of distributing data. Instead of relying
    on a central server to distribute data directly to individual users, the BitTorrent protocol
7     allows individual users to distribute data among themselves by exchanging pieces of the file
    with each other to eventually obtain a whole copy of the file. When using the BitTorrent
8     protocol, every user simultaneously receives information from and transfers information to
    one another.

9

10  *Id.* at ¶ 11. According to Plaintiff, "peers" are "individual downloaders or distributors of a particular

11  file." *Id.* at ¶ 12. A "swarm" is a group of "peers" involved in downloading or distributing a

12  particular file. *Id.* A "tracker" is a server which stores a list of "peers" in a "swarm." *Id.* Plaintiff

13  states that each "swarm" is "unique to a particular file." *Id.* Plaintiff explains that the BitTorrent

14  protocol functions as follows:

15     First, a user locates a small "torrent" file. This file contains information about the files to be
    shared and about the tracker, the computer that coordinates the file distribution. Second, the
16     user loads the torrent file into a BitTorrent client, which automatically attempts to connect
    the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the
17     BitTorrent client connects to those peers to begin downloading data from and distributing
    data to the other peers in the swarm. When the download is complete, the BitTorrent client
18     continues distributing data to other peers in the swarm until the user manually disconnects
    from the swarm or the BitTorrent client otherwise does the same.

19

20  *Id.* at ¶ 13.

21     Plaintiff alleges that joinder of the Doe Defendants is proper in the present case because:

22     [t]he nature of the BitTorrent distribution protocol necessitates a concerted action by many
    people in order to disseminate files, such as Plaintiff's Work . . . [and] [t]he Doe Defendants
23     are properly joined even if they were not engaged in a contemporaneous swarm because they
    have contributed to the chain of data distribution due to their prior involvement in like
24     swarms.

25  *Id.* at ¶ 5. Plaintiff states that it knows Doe Defendants only by their IP addresses, which were

26  identified by Plaintiff's agents "observ[ing] unlawful reproduction and distribution occurring among

27  IP addresses listed on Exhibit A . . . via the BitTorrent Internet protocol." *Id.* at ¶ 8. Exhibit A to the

28

**United States District Court**
For the Northern District of California

1 Complaint lists the IP addresses of the Doe Defendants, as well as the date and time in which the

2 Does at these IP addresses allegedly engaged in acts of infringement.

3 On March 31, 2011, Plaintiff initiated this lawsuit by filing a Complaint in which it asserted

4 a federal claim for infringement of the Copyright Act and a state common law claim for civil

5 conspiracy, based on the theory that the Doe Defendants conspired to commit copyright

6 infringement. *Id.* at ¶¶ 30-31, 39. Plaintiffs seek an award for both injunctive and monetary relief.

7 *Id.*

8 **B.    Plaintiff's Motion For Leave to Take Early Discovery**

9 Because Plaintiff knew the Doe Defendants only by their IP addresses, Plaintiff sought leave

10 to take early discovery in order to subpoena the Internet Service Providers ("ISP") of the IP

11 addresses associated with each of the 188 Doe Defendants to obtain the names, current and

12 permanent addresses, telephone numbers, email addressees, and Media Access Control addresses

13 ("MAC addresses") of the Doe Defendants. Plaintiff's *Ex Parte* Application for Leave to Take

14 Expedited Discovery with Expanded Joinder Discussion, Docket No. 10 at 3. ("Application").

15 In support of the Application, Plaintiff submitted the declaration of Peter Hansmeier, a

16 technician for Media Copyright Group, LLC ("MCG"), explaining how Plaintiff had identified the

17 IP addresses of Doe Defendants. Application, Ex. A, (Declaration of Peter Hansmeier in Support of

18 *Ex Parte* Application for Leave to Take Expedited Discovery ("Hansmeier Decl.")) at ¶¶ 12-20.

19 Hansmeier stated that he used a "tracker" to locate a "swarm" associated with the copyrighted Work,

20 and was subsequently able to use software to collect data, including IP addresses, of each "peer"

21 within the "swarm." *Id.* at ¶¶ 14-15. Although Plaintiff was able to identify the IP addresses of Doe

22 Defendants, it was not able to capture any other identifying information. *Id.* at ¶ 15. Hansmeier

23 stated that only the ISPs can access the Doe Defendants' names and addresses. *Id.* at ¶ 21.

24 Hansmeier further stated that "without expedited discovery . . . Plaintiff will have no means of

25 serving [Doe] Defendants with the complaint and summons . . . and no means to protect its creative

26 works from ongoing infringement." *Id.* Plaintiff urged that expedited discovery was of critical

27 importance because ISPs vary in the period of time that they preserve identifying information of

28 users of specific IP addresses. *Id.* at ¶ 22; Application at 5.

United States District Court
For the Northern District of California

**C.** **Order Granting Leave to Take Early Discovery**

On May 6, 2011, the Court granted Plaintiff's request for leave to take discovery prior to the Rule 26(f) Conference, authorizing Plaintiff to serve Rule 45 subpoenas on the ISPs named in Exhibit A of the Complaint. Order Granting Plaintiff's Application for Leave to Take Discovery Prior to Rule 26(f) Conference with Extended Joinder Discussion, Docket No. 12 ("Order"). The subpoenas required the ISPs to notify subscribers of the IP addresses whose information was to be released so that the subscribers would have an opportunity to file objections or motions to quash with the Court. *Id.*

**D.** **The Motion to Quash**

On June 21, 2011, Doe 24.5.180.56 filed a Motion to Quash the subpoena, asking the Court to prohibit the ISP from releasing Doe 24.5.180.56's name, correct (and permanent) address, telephone number, e-mail address, and Media Access Control address pursuant to the subpoena. June 21 Mot. to Quash. Doe 24.5.180.56 claims that the subpoena for this information should be quashed and the claims asserted against him dismissed because joinder of the Doe Defendants is improper. *Id.* at ¶ 1. Doe 24.5.180.56 further asserts that the June 21 Motion to Quash should be granted on the basis of the unreliability of IP and MAC address tracing, and the difficulty of determining who is actually using an IP address in light of the fact that some home networks are not secure and that even within the household, and it is impossible to determine which approved user is responsible for a particular download. *Id.* at ¶¶ 2-5. Doe 24.5.180.56 also questions Plaintiff's ability to sue for copyright infringement because Plaintiff has not provided a copyright registration number or official document from the United States Copyright Office. *Id.* at ¶ 6.

With respect to the question of joinder of the Doe Defendants, Doe 24.5.180.56 asserts that the claims against him (as well as those asserted against the other Does) qualify as a unique case because each Doe has a separate network configuration, hardware and ISP, requiring individual investigation and giving rise to different defenses. *Id.* at ¶ 1. Therefore, he asserts, joinder is improper. Doe 24.5.180.56 also makes several arguments addressing the unreliability of the technology used to identify the individuals responsible for the alleged copyright infringement. *Id.* at ¶¶ 2-5. Doe 24.5.180.56 first argues that the Court should grant the motion to quash and dismiss the

United States District Court
For the Northern District of California

1   claims against him because there exist "software solutions that allow users to 'spoof' or impersonate

2   false IP addresses." *Id.* at ¶ 2. Doe 24.5.180.56 similarly argues that MAC address tracing is

3   unreliable because ISPs are unable to detect users' MAC addresses, most ISPs do not store MAC

4   address data, and there are ways to fake MAC addresses. *Id.* at ¶ 3. Doe 24.5.180.56 asserts that

5   because MAC address tracing is unreliable, Plaintiff will be unable to verify who downloaded the

6   copyrighted material and where the copyrighted material was downloaded. *Id.*

7       Doe 24.5.180.56 cites several cases in support of his Motion to Quash. First, Doe

8   24.5.180.56 cites *VPR Internationale v. Does 1-1017*, in which the Central District of Illinois denied

9   a motion to certify interlocutory review of the court's denial of plaintiff's motion for expedited

10  discovery. *Id.* at ¶ 7(A). The plaintiff in *VPR Internationale* sought early discovery to subpoena the

11  identifying information of the subscribers of IP addresses who allegedly infringed upon the

12  plaintiff's copyright of a motion picture. *See VPR Internationale,* Case No.11-2068 (C.D. Ill., filed

13  Apr. 29, 2011). The court denied the request for early discovery and later denied the plaintiff's

14  motion for interlocutory review because the "court will not be used to advance a 'fishing expedition

15  by means of a perversion of the purpose and intent' of class action." *Id.* at 3. Second, Doe

16  24.5.180.56 cites *Patrick Collins v. Does 1-1219*, 2010 WL 5422569 (N.D. Cal. Dec. 28, 2010), and

17  *On the Cheap v. Does 1-5011*, as examples of cases in which the court granted motions to quash.

18  June 21 Mot. to Quash at ¶ 7(B). Third, Doe 24.5.180.56 cites *BMG Music v. Does 1-203*, 2004 WL

19  953888 (E.D. Pa. Apr. 2, 2004), as an example of a case involving similar allegations that was

20  dismissed because of improper joinder. June 21 Mot. to Quash at ¶ 7(C). Fourth, Doe 24.5.180.56

21  cites *Millenium TGA, Inc. v. Does 1-800*, Case No. 10-05604 (N.D. Ill., filed Sept. 2, 2010), as an

22  example of a case in which the court found improper joinder and improper venue where unidentified

23  Doe defendants were sued for copyright infringement. June 21 Mot. to Quash ¶ 7(F). Doe

24  24.5.180.56 also cites *First Time Videos, LLC v. Does 1-500*, *Id.* at ¶ 7(D), a list of orders from West

25  Virginia, *Id.* at ¶ 7(E), and a list of cases from various districts, *Id.* at ¶ 7(G), without providing legal

26  citations or explanations of the relevance of the cases to the present Motion.

27

28

United States District Court
For the Northern District of California

### E.   Opposition to the Motion to Quash

On June 30, 2011, Plaintiff filed a Response in Opposition to Movant's Motion to Quash Subpoena. Docket No. 24 ("Opposition"). In the Opposition, Plaintiff argues that Doe 24.5.180.56's Motion to Quash should be denied because: (1) the argument regarding misjoinder is improper at this stage of the case; (2) a subpoena may not be quashed based on arguments that address the merits of the case; and (3) Doe 24.5.180.56's copyright registration argument is frivolous. Plaintiff further asserts that Doe 24.5.180.56's reliance on unrelated authority is not a basis for quashing the subpoenas. Opposition at 1-2.

First, Plaintiff argues that Doe 24.5.180.56's challenge to joinder is premature because Plaintiff's allegations that the "Doe Defendants have infringed Plaintiff's copyrighted Work . . . through the same file-sharing protocol . . . [has] been held sufficient to sustain joinder while discovery of Doe Defendants' identities is underway." *Id.* at 2 (citing *MCGIP, LLC v. Does 1-18*, 2011 WL 218160 at *4 (N.D. Cal. June 2, 2011)). Plaintiff argues that Doe 24.5.180.56 can only raise his misjoinder claim after the Doe Defendants have been named and served. *Id.* at 3.

Second, Plaintiff asserts that Doe 24.5.180.56's arguments based on the reliability of IP tracing technology go to the merits of the case and thus are not relevant to "whether [a] subpoena is valid and enforceable." *Id.* (citing *Voltage Pictures, LLC v. Does 1-5,000*, 2011 WL 1807438 at *4 (D.D.C. May 12, 2011)).  Plaintiff argues that any defenses to the lawsuit may be raised only after Doe 24.5.180.56 has been identified and named a party in the lawsuit. *Id.* at 4.

Third, Plaintiff asserts that Doe 24.5.180.56's copyright registration argument is frivolous because Plaintiff has alleged that it has a currently pending copyright application for the Work in the United States Copyright Office, *Id.* (citing Complaint at ¶ 20), and the Ninth Circuit has found that the United States Copyright Office's receipt of a complete copyright application satisfies the registration requirement of a copyright infringement action. *Id.* at 4 (citing *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 621 (9th Cir. 2010)).

### F.   Voluntary Dismissal of Doe Defendants 1-5

On August 10, 2011, Plaintiff voluntarily dismissed Does 1-5 from the action pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure.

### III. MAGISTRATE JURISDICTION UNDER 28 U.S.C. § 636

Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge has jurisdiction to hear and decide non-dispositive matters without the consent of the parties. A motion to quash is normally considered a non-dispositive matter, *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010), and therefore, the undersigned has jurisdiction to rule on Doe 24.5.180.56's motion to the extent he seeks to quash Plaintiff's subpoena. In addition, a magistrate judge has jurisdiction to consider the question of whether of joinder of unserved defendants is proper, including whether unserved defendants should be severed and dismissed from the action, because defendants who have not been served are not considered "parties" under 28 U.S.C. § 636(c). *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) (holding that magistrate judge had jurisdiction to dismiss prison inmate's action under 42 U.S.C. § 1983 as frivolous without consent of defendants because defendants had not been served yet and therefore were not parties); *see also United States v. Real Property*, 135 F.3d 1212, 1217 (9th Cir. 1998) (holding that magistrate judge had jurisdiction to enter default judgment in an in rem forfeiture action even though property owner had not consented to it because 28 U.S.C. § 636(c)(1) only requires the consent of the parties and the property owner, having failed to comply with the applicable filing requirements, was not a party). Here, Plaintiff has consented to magistrate jurisdiction and the Doe Defendants have not yet been served. Therefore, the Court finds that it has jurisdiction under 28 U.S.C. § 636(c) to decide the issues raised in the instant motion.

### IV. ANALYSIS

#### A. Legal Standard

##### 1. Authority to Quash Subpoenas

Under Rule 45(c)(3), a court must modify or quash a subpoena that, *inter alia*, "requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A). A court may modify or quash a subpoena that, *inter alia*, requires disclosing confidential information. Fed. R. Civ. P. 45(c)(3)(B).

Furthermore, Rule 26(c)(1) provides:

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect

United States District Court
For the Northern District of California

1  a party or person from annoyance, embarrassment, oppression, or undue burden or expense,
2  including . . . forbidding the disclosure or discovery.

3  Fed. R. Civ. P. 26(c)(1). The court also must:

4  limit the frequency or extent of discovery otherwise allowed by [the Federal Rules of Civil
   Procedure] or by local rule if it determines that . . . the burden or expense of the proposed
5  discovery outweighs its likely benefit, considering the needs of the case, the amount in
   controversy, the parties' resources, the importance of the issues at stake in the action, and the
6  importance of discovery in resolving the issues.

7  Fed. R. Civ. P. 26(b)(2)(C)(iii).

8           2.      **Permissive Joinder**

9           Under Rule 20(a)(2), permissive joinder of defendants is proper if: "(A) any right to relief is

10  asserted against them jointly, severally, or in the alternative with respect to or arising out of the same

11  transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact

12  common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 20(a)(2) is

13  designed to promote judicial economy and trial convenience. *See Mosley v. Gen. Motors*, 497 F.2d

14  1330, 1332-33 (8th Cir. 1974). The Supreme Court has found that "[u]nder the [Federal] Rules [of

15  Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent

16  with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United*

17  *Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724.

18           Rule 21 further provides that "[m]isjoinder of parties is not a ground for dismissing an

19  action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The

20  court may also sever any claim against a party." Fed. R. Civ. P. 21.

21           3.      **Discretionary Severance**

22           The Ninth Circuit has found that "even once [the Rule 20(a)] requirements are met, a district

23  court must examine whether permissive joinder would 'comport with the principles of fundamental

24  fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Company*, 232 F.3d

25  1271, 1296 (9th Cir. 2000) (citing *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d

26  1371, 1375 (9th Cir. 1980) (finding that the district court did not abuse its discretion when it severed

27  certain plaintiff's claims without finding improper joinder)). Under Rule 20(b), the district court

28  may sever claims or parties in order to avoid prejudice. Fed. R. Civ. P. 20(b). Courts have also

1 exercised their discretion to sever where "[i]nstead of making the resolution of [the] case more

2 efficient . . . joinder would instead confuse and complicate the issues for all parties involved." *See,*

3 *e.g.*, *Wynn v. National Broadcasting Company*, 234 F. Supp. 2d 1067, 1088 (C.D. Cal. 2002)

4 (finding that even where Rule 20 requirements for joinder are satisfied, the Court may exercise its

5 discretion "to sever for at least two reasons: (1) to prevent jury confusion and judicial inefficiency,

6 and (2) to prevent unfair prejudice to the [defendants]") (citing *Coleman*, 232 F.3d at 1296).

7 **4.    Motions Brought by Pro Se Litigants**

8    The Supreme Court has found that a federal court should be liberal in its construction of a

9 *pro se* litigant's motion, and may even "ignore the legal label that a pro se litigant attaches to a

10 motion and recharacterize the motion in order to place it within a different legal category," so long

11 as the *pro se* litigant is warned of the recharacterization. *See Castro v. United States*, 540 U.S. 375,

12 381-84 (collecting cases).

13 **B.    Whether Joinder of Doe Defendants Should be Permitted**

14    Although Doe 24.5.180.56 has not brought a motion to sever or a motion to dismiss, in order

15 to rule on Doe 24.5.180.56's Motion to Quash, the Court must address the questions of whether Rule

16 20(a)(2) joinder of Doe Defendants in this action is proper under Rule 20(a) and further, whether

17 there are grounds for exercising the discretionary power to sever under Rule 20(b).

18 **1.    Joinder Under Rule 20(a)**

19    With the advent of BitTorrent technology, courts have grappled with the question of whether

20 joinder of Doe defendants who engage in acts of infringement using BitTorrent technology should

21 be treated in the same way as joinder of defendants in connection with earlier P2P technologies. A

22 growing number of decisions by district courts offer guidance on this question, though they have

23 reached different conclusions. Although some courts have distinguished BitTorrent from prior P2P

24 technologies and on that basis have permitted joinder of multiple Does who are a part of single

25 "swarm," at least at the early stages of the case, several judges in the Northern District of California

26 have recently found that use of BitTorrent, like earlier P2P technologies, is not sufficient to satisfy

27 the requirements of Rule 20(a), *even if* the Doe defendants are part of a single swarm.  For the

28

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    reasons stated below, the Court finds that the latter approach is more persuasive. Therefore, the

2    Court concludes that permissive joinder of the Doe Defendants is improper under Rule 20(a).

3             **a.**      **P2P Case Law Prior to BitTorrent**

4       In the case law addressing alleged copyright infringement using P2P technologies that pre-

5    date BitTorrent technology, numerous courts have found that the alleged use of the same P2P

6    network by a group of Doe defendants to commit copyright infringement is insufficient to sustain

7    permissive joinder. *See IO Group, Inc. v. Does 1-19*, 2010 WL 5071605, at *3 (N.D. Cal. Dec. 7,

8    2010) (collecting cases). A review of some of these cases is instructive.

9       In *Laface Records, LLC. v. Does 1-38*, the plaintiffs owned copyrights in various sound

10    recordings and sued 38 Doe defendants on the basis that they had illegally downloaded and

11    distributed copyrighted material from the Internet "using an online media distribution network, a

12    peer-to-peer network." 2008 WL 544992, at *1 (E.D.N.C. Feb. 27, 2008). A magistrate judge

13    permitted earlier discovery permitting the plaintiffs to serve Rule 45 subpoenas on the ISPs of the

14    Doe defendants and numerous Does brought motions asking the court to quash the plaintiffs'

15    subpoenas and vacate the early discovery order on the basis that they were improperly joined. *Id.* at

16    *2. The district court found that the Doe defendants were improperly joined under Rule 20(a)(2)

17    because the copyright infringement claims did not arise out of the same transaction, occurrence or

18    series of transactions or occurrences, rejecting the plaintiffs' contention that the copyright

19    infringement arose out of the same transaction, occurrence, or series of transactions or occurrences

20    because "each defendant used the same ISP as well as some of the same P2P networks." *Id.* Rather,

21    the court concluded that "merely committing the same type of violation in the same way does not

22    link defendants together for purposes of joinder." *Id.* The court therefore severed all of the Doe

23    defendants but one and deemed the subpoenas served on the severed Doe defendants' ISP to be "no

24    longer valid." *Id.* at *3. The court did not immediately dismiss the severed Doe defendants,

25    allowing plaintiffs twenty days to file new, separate actions against each of the severed Doe

26    defendants. *Id.* However, if the plaintiff did not timely file new, separate actions, the court ordered

27    the claims against each of the severed Doe defendants to be dismissed. *Id.*

28

Similarly, in *Interscope Records* the court found joinder to be improper under Rule 20(a)(2) even though Doe defendants were alleged to have disseminated plaintiffs' copyrighted works through the same P2P network. 2004 U.S. Dist. LEXIS 27782, at *2, *19 (M.D. Fl. Apr. 1, 2004). The court disagreed with the plaintiffs' assertion that joinder was proper because "the [d]efendants 'have participated in a common scheme or pattern of behavior,' via the downloading and dissemination of [p]laintiffs' sound recordings using the same network, 'without which no [d]efendant would have been able to commit much of the infringing activity.'" *Id.* at *10. Instead, the court found "the same transaction requirement [of Rule 20(a)]. . . is not satisfied by the fact that the [d]efendants accessed the songs through [the same P2P network]," and the court recommended that all claims "except those by the first plaintiff against the first defendant be severed . . . [and that] the other plaintiffs and [claims] against other defendants be dismissed." *Id.* at *19, *16.

In *Elektra Entertainment Group, Inc. v. Does 1-9*, plaintiff alleged in its complaint that Doe defendants committed copyright infringement by disseminating plaintiff's copyrighted work via a P2P network. *Elektra Entertainment Group, Inc. v. Does 1-9*, 2004 WL 2095581, at *1 (S.D.N.Y. Sept. 8, 2004). The plaintiff identified the ISP addresses of the Doe defendants, and then filed an *ex parte* motion to take expedited discovery. *Id.* The court initially granted the *ex parte* motion to take early discovery to identify all the Doe defendants. *Id.* However, Doe defendant number 7 moved to quash the subpoena served upon his ISP, and to sever himself from the action. *Id.* The court denied the motion to quash and the motion to dismiss, but granted Doe defendant number 7's motion to sever himself from the action, finding that the mere use of the same P2P protocol was insufficient to establish that plaintiff's copyright infringement claims were logically related for the purposes of a Rule 20(a)(2) joinder. *Id.* at *6-7. The court further ordered that plaintiff file a separate action against Doe number 7. *Id.* at *8.

In *Fonovisa, Inc. v. Does 1-9*, the court found Rule 20(a)(2) joinder to be improper where sixteen plaintiffs alleged that nine defendants had committed copyright infringement of more than one copyrighted work. 2008 WL 919701 (W.D. Pa. Apr. 3, 2008). Initially, the *Fonovisa* court granted plaintiff's *ex parte* application for leave to take early discovery on the basis that the defendants were alleged to have committed copyright infringement using the same P2P network. *Id.*

United States District Court
For the Northern District of California

1   Then, after a Doe defendant filed a motion to dismiss (which the court construed as a motion for

2   severance), the court found joinder to be improper under Rule 20(a)(2) because, *inter alia*,

3   "plaintiffs have failed to show that one or more of the [d]efendants has actually downloaded songs

4   from another [d]efendant, which could conceivably link the [d]efendants or show they acted in

5   concert." *Id.* at *1, *5. The court held that "given the different factual contexts of the alleged

6   infringement for each [d]efendant and the absence of any evidence showing joint action by

7   [d]efendants, other than their use of the same peer-to-peer network to access the copyright

8   recordings and the same ISP . . . [p]laintiffs have failed to satisfy the requirements for permissive

9   joinder under Rule 20(a)." *Id.* at *6. Finding joinder to be improper under Rule 20(a)(2), the court

10  granted the Doe defendant's motion for severance, severing "all claims except those raised by

11  [p]laintiffs against [d]oe #3," and dismissing without prejudice "[p]laintiff's claims against

12  [d]efendants [d]oes #1-2 and 4-9." *Id.* at 11.

13
           **b.    Application of the P2P Case Law Framework to BitTorrent
14                 Technology**

15         With the advent of the BitTorrent technology, some courts have accepted the assertion of

16  plaintiff that Doe defendants who have participated in the same swarm to download a copyrighted

17  work may properly be joined under Rule 20(a), notwithstanding the authority that reaches a contrary

18  conclusion with respect to earlier P2P technologies (discussed above). *See, e.g.*, *MCGIP, LLC. v.*

19  *Does 1-18*, 2011 WL 2181620 (N.D. Cal. June 2, 2011); *Voltage*, 2011 WL 1807438 at *5 (D.D.C.

20  May 12, 2011); *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332 (D.D.C. Mar. 22,

21  2011)(D.D.C. Mar. 22, 2011) (collecting cases).

22         In *MCGIP*, for example, the court denied a Doe defendant's motion to quash a subpoena

23  issued by the plaintiff to the Doe defendants' ISPs seeking to identify the Doe defendants in the

24  case. *MCGIP*, 2011 WL 2181620, at *1 (N.D. Cal. June 2, 2011). The court rejected the Doe

25  defendant's argument that the motion to quash should be granted on the basis of improper joinder,

26  reasoning that while joinder might be found improper at a later stage of the case, when the identities

27  of the Does had been determined, the allegation "that the Doe [d]efendants have infringed

28  [p]laintiff's copyright through 'the same file sharing software program [*i.e.*, BitTorrent] that operates

United States District Court
For the Northern District of California

1 through simultaneous and sequential computer connections and data transfers among the users'" was

2 sufficient to satisfy Rule 20(a) at the pleading stage. *Id.*

3       Similarly, in *Voltage*, the court found joinder under Rule 20(a)(2) was proper where the Doe

4 defendants allegedly downloaded and distributed plaintiff's copyrighted movie using BitTorrent

5 technology. *See Voltage*, 2011 WL 1807438 at *5 (D.D.C. May 12, 2011). After the court granted

6 the plaintiff leave to subpoena the ISPs in order to identify the putative defendants, 119 putative

7 defendants filed motions to quash the plaintiff's subpoenas. *Id.* at *1-2. Seven of the putative

8 defendants argued that they should be dismissed for improper joinder. *Id.* at *4. The court, however,

9 found joinder to be proper. *Id.* In permitting Rule 20(a)(2) joinder, the court relied on the standard

10 set forth in *United Mine Workers*, where the Court held that "[u]nder the [Federal] Rules [of Civil

11 Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with

12 fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine*

13 *Workers of Am.*, 383 U.S. at 724. The court also cited Rule 20(a)(2)(A), stating that it "essentially

14 requires claims asserted against joined parties to be 'logically related.'" *Voltage*, 2011 WL 1807438,

15 at *5 (citing *Disparte v. Corporate Exec. Bd.,* 223 F.R.D. 7, 10 (D.D.C. 2004)). The *Voltage* court

16 stated:

17      the plaintiff allege[d] that the putative defendants used the BitTorrent file-sharing protocol to
distribute illegally the plaintiff's motion picture . . . This file-sharing protocol 'makes every

18      downloader also an uploader of the illegally transferred file(s). This means that every . . .
user who has a copy of the infringing copyrighted material on a torrent network must

19      necessarily also be a source of download for that infringing file.'

20 *Id.* (quoting plaintiff's complaint). The court therefore permitted the Rule 20(a)(2) joinder because

21      [b]ased on [plaintiff's allegations], the plaintiff's claims against the putative defendants are
logically related at this stage in the litigation. . . . [and] at this procedural juncture the

22      plaintiff has sufficiently alleged that its claims against the putative defendants potentially
stem from the same transaction or occurrence, and are logically related.

23 *Id.*

24      Finally, in *Call of the Wild Movie*, after granting the plaintiffs' motion for expedited

25 discovery to obtain identifying information about the Doe defendants in three pending copyright

26 infringement cases, the court denied the ISPs' motion to quash or modify the subpoena. *Call of the*

27 *Wild Movie,* 770 F. Supp. 2d 332, 338 (D.D.C. Mar. 22, 2011). The ISPs and amici urged the court

28 to quash the subpoenas based, in part, upon improper joinder, arguing "that engaging in 'separate but

1    similar behavior by individuals allegedly using the Internet to commit copyright infringement' does

2    not satisfy Rule(a)(2)(A)'s requirement that the claim asserted against the joined defendants arise

3    out of the same transaction, occurrence, or series of transactions or occurrences.'" *Id.* at 342-43.

4    However the court rejected this argument.  Like the *Voltage* court, the court in *Call of the Wild*

5    *Movies* found that Rule 20(a)(2)(A) "essentially requires claims asserted against joined parties to be

6    'logically related' . . . [and that] [t]his is a flexible test and courts seek the 'broadest possible scope

7    of action.'" *Id.* at 342 (citing *Disparte*, 223 F.R.D. at 10; *Lane v. Tschetter*, 2007 WL 2007493, at *7

8    (D.D.C. July 10, 2007)).  The court then found plaintiffs' allegation

9      that the BitTorrent file-sharing protocol 'makes every downloader also an uploader of the
  illegally transferred file(s)'. . . [and that] the 'nature of a BitTorrent protocol [is that] any
10     seed peer that has downloaded a file prior to the time a subsequent peer downloads the same
  file is automatically a source for the subsequent peer so long as that first seed peer is online
11     at the time the subsequent peer downloads a file'

12   was sufficient to establish that "the plaintiffs' claims against the defendants are logically related."

13   *Call of the Wild*, 770 F. Supp. 2d at 343 (quoting complaint).  The court further found the plaintiffs

14   met the requirement that the claims against the putative defendants contain a common question of

15   law or fact, and that joinder would not prejudice the parties or result in needless delay.  *Id.*  While the

16   court recognized "that each putative defendant may later present different factual and substantive

17   legal defenses . . . that does not defeat, at this stage of the proceedings, the commonality in facts and

18   legal claims that support joinder under Rule 20(a)(2)(B)." *Id.* at 344.

19     Several judges in the Northern District of California, however, have rejected the approach

20   discussed above, finding that use of BitTorrent technology, like earlier P2P technologies, does not

21   satisfy the requirements for permissive joinder.  For example, in *Diabolic Video Productions*, Judge

22   Grewal found Rule 20(a)(2) joinder improper where plaintiff alleged that 2,099 different defendants

23   acted in concert to reproduce plaintiff's copyrighted film on forty-nine different days using the

24   BitTorrent protocol. *Diabolic Video Productions*, 2011 WL 3100404, at *1 (N.D. Cal. May 31,

25   2011). There, the plaintiff attempted to join all Doe defendants in one action, seeking expedited

26   discovery "to serve subpoenas on several enumerated ISPs to obtain the true identities of Doe

27   [d]efendants for purpose of service in accordance with Fed.R.Civ.P. 4." *Id.*  As a threshold matter,

28   the court rejected the plaintiff's argument that the single transaction or series of closely-related

United States District Court
For the Northern District of California

transactions requirement under Rule 20(a)(2) was satisfied merely because all defendants joined a common "swarm" to upload or download the copyrighted film. *Id.* at *3. Instead, the court followed the general rule established by courts addressing alleged copyright infringement through the use of earlier P2P technologies: "the mere allegation that defendants have used the same peer-to-peer network to infringe a copyrighted work is insufficient to meet the standards of joinder set forth in Rule 20." *Id.* The court rejected the plaintiff's contention that Rule 20(a)(2) joinder was proper because the plaintiff alleged that all Doe defendants "acted in cooperation with one another 'by agreeing to provide, and actually providing, on a P2P network, an infringing reproduction of at least substantial portions of Diabolic's copyrighted [m]otion [p]icture, in anticipation of the other [d]efendants doing likewise with respect to that work and/or other works.'" *Id.* Therefore, finding the Rule 20(a)(2) joinder to be impermissible, the court severed all Does but Doe 1 and reassigned the severed Does to an Article III judge with the recommendation the claims against them be dismissed. *Id.* at *5.

In *Pacific Century International*, Judge Ryu reached a similar result. *Pacific Century International*, 2011 WL 2690142 (N.D. Cal. July 8, 2011). There, the plaintiff sought expedited discovery to serve subpoenas on the ISPs of 101 Doe defendants who were alleged to have engaged in a civil conspiracy in order to commit copyright infringement of plaintiff's copyrighted work using BitTorrent technology. *Id.* The court found, as a threshold matter, that Rule 20(a)(2) joinder was improper because "the only commonality between copyright infringers of the same work is that each 'commit[ted] the exact same violation of the law in exactly the same way.'" *Pacific Century International*, 2011 WL 2690142, at *4 (N.D. Cal. July 8, 2011) (citing *LaFace Records*, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008)). Furthermore, in addressing the plaintiff's civil conspiracy claim, the court found that:

> [a]lthough [p]laintiff explains the protocol and how it differs from its predecessor P2P programs, and specifically claims that [d]efendants have engaged in a civil conspiracy . . . [p]laintiff still has failed to demonstrate that it has 'any right to relief against [Defendants] . . . arising out of the same transaction, occurrence, or series of transactions or occurrences.

*Id.* (citing Fed.R.Civ.P. 20(a)(2)(A)). Accordingly, the court denied the plaintiff's request for expedited discovery as to all Doe defendants, granting instead expedited discovery on only Doe

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  defendant 1, while severing and dismissing the remaining Does without prejudice for improper Rule

2  20(a)(2) joinder. *Id.* at \*4.

3      In *Millennium TGA*, Judge Conti found Rule 20(a) joinder to be improper where the plaintiff

4  alleged that twenty-one Doe defendants used BitTorrent to unlawfully reproduce and distribute

5  plaintiff's copyrighted work, and sought expedited discovery on eight ISPs "to compel them to

6  provide the name, address, telephone number, e-mail address, and media access control address of

7  each [d]oe [d]efendant." *Millennium TGA*, 2011 WL 1812786, at \*1 (N.D. Cal. May 12, 2011). The

8  court denied the plaintiff's application to take early third-party discovery because "[p]laintiff has

9  failed to establish that either its civil conspiracy claim or its copyright claim could survive a motion

10 to dismiss." *Id.* at \*3. In ruling that the plaintiff's claim could not survive a motion to dismiss, the

11 court found Rule 20(a)(2) joinder of the Doe defendants impermissible because "the Doe

12 [d]efendants' individual and separate alleged reproductions of Plaintiff's Work – which occurred

13 over the span of twenty days – do not satisfy [the Rule 20(a)(2)] requirement." *Millennium TGA*,

14 2011 WL 1812786, at \*3 (N.D. Cal. May 12, 2011).

15     Finally, in a recent order addressing a request for expedited discovery in the context of a

16 copyright infringement action based on alleged use of BitTorrent by numerous Doe defendants,

17 Judge Grewal revisited the question of whether BitTorrent technology requires that it be treated

18 differently from earlier P2P technologies for the purposes of joinder. *See Boy Racer v. John Does 2-*

19 *52*. Case No. 11-2834, N.D. Cal., Docket No. 12. After receiving supplemental briefing on the

20 question from the plaintiffs, he concluded that it should not, reasoning as follows:

21     . . . to distinguish the technical architecture of BitTorrent from those file-sharing protocols
       which other courts have found failed to justify joinder, Boy Racer explains that users of the
22     BitTorrent protocol have a higher degree of interactivity and engage in "deep and sustained
       collaboration with their peers," as follows:
23
24     First, the protocol breaks a single large file into a series of smaller distributable
       pieces. Then, an initial file-provider (the "seeder") intentionally elects to distribute
25     the pieces to third parties. This is called "seeding." Other users ("peers") on the
       network, download a small "torrent" file that contains directions on where to find the
26     seeder as well as an index of the pieces. The torrent file is loaded into BitTorrent
       software, and the software follows the directions on where to find the seeder as well
27     as an index of the pieces. The torrent file is loaded into BitTorrent software, and the
       software follows the directions in the torrent file to connect to the seeder. When a
28     piece download is complete, the peers automatically become seeders with respect to
       the downloaded pieces. In other words, each peer in a swarm transforms from a pure

downloader (a "leecher" in BitTorrent vernacular) to a peer that is simultaneously downloading and distributing pieces of a file. By this mechanism, each peer collaborates with others in the swarm to complete the distribution of a file. A piece shared by the initial seeder or any later seeders will be distributed amongst the peers countless times over– even if the seeder leaves the swarm. Users can be connected to one another over the span of weeks simply via the initial download.

Boy Racer goes on to note:

The BitTorrent file distribution protocol leads to a rapid viral spreading of a file through willful peer users, all of whom are both intentionally uploading and downloading portions of the file simultaneously. As more peers intentionally join the swarm for the copyrighted works, the likelihood of a successful download increases. Due to the nature of the BitTorrent protocol, any peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a possible, and even a likely, source of the file for the subsequent peer. Indeed, a majority of the prominent adult content torrent-indexing websites mandate that users maintain a minimum upload/download ratio, which means that users who download a file via the BitTorrent protocol are highly likely to serve as seeders in order to assure that they meet ratio requirements. Essentially, because of the nature of the swarm downloads, every infringer is simultaneously illegally downloading and distributing copyrighted material through collaboration from many other infringers, through a number of ISPs, in numerous jurisdictions around the country– although this lawsuit is isolated to peers who are believed to be located exclusively in California.

According to Boy Racer, this greater extent of "cooperation and concerted action" among BitTorrent users than among users of other protocols makes joinder proper here.

Even with the description of the BitTorrent technology provided by Mr. Hansmeier, the court remains unpersuaded that the peer-to-peer architecture of the BitTorrent technology justifies the joinder of otherwise unrelated defendants in a single action. First, the Hansmeier declaration argues at length about the "concerted activity" within a given swarm. Presumably he does so in response to the concern highlighted by Judge Ryu that users in different swarms have nothing in common other than downloading the same work, which as this court and others have noted is insufficient under our precedent. But the Hansmeier declaration itself offers overwhelming evidence that the IP addresses were in fact gathered from multiple swarms. Second, even if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses "acted in concert" with all of the others. In fact, the nearly six-week span covering the activity associated with each of the addresses calls into question whether there was ever common activity linking the 51 addresses in this case. In this age of instant digital gratification, it is difficult to imagine, let alone believe, that an alleged infringer of the copyrighted work would patiently wait six weeks to collect the bits of the work necessary to watch the work as a whole. At the very least, there is no proof that bits from each of these addresses were ever assembled into a single swarm. As the court previously explained, under this court's precedent regarding other file sharing protocols, merely infringing the same copyrighted work over this period is not enough. Finally, nothing in the BitTorrent architecture changes the fact that each defendant also will likely have a different defense. As the district court in BMG Music put it:

Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   Docket No. 12 at 3-6.

2        Here, the Court finds the reasoning in *Boy Racer* and *Diabolic Video Productions, Pacific*

3   *Century International*, and *Millennium TGA* persuasive.  Does 1-188 did not participate in the same

4   transaction or occurrence, or the same series of transactions or occurrences.  Under the BitTorrent

5   Protocol, it is not necessary that each of the Does 1-188 participated in or contributed to the

6   downloading of each other's copies of the work at issue – or even participated in or contributed to

7   the downloading by any of the Does 1-188.  Any "pieces" of the work copied or uploaded by any

8   individual Doe may have gone to any other Doe *or to any of the potentially thousands who*

9   *participated in a given swarm.*  The bare fact that a Doe clicked on a command to participate in the

10   BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or

11   thousands of individuals across the country or across the world.

12        Moreover, the court notes that the declaration submitted in this action, like the declaration in

13   *Boy Racer*, appears to contradict the assertion that the Does named in this action are part of a single

14   swarm.  *See* Hansmeier Decl., ¶ 13 ("[the first step in the infringer-identification process is to locate

15   swarms where peers are distributing the copyrighted creative works.");¶ 14 ("I used all three

16   methods to locate swarms associated with Plaintiff's exclusive license.").  Further, although

17   Hansmeier states that he "collected data on the peers in the swarm, including what activities each

18   peer was engaging in and other important such as the date and time that each Defendant was

19   observed by the software as engaging in infringing activity," the exhibit attached to the complaint

20   reflects that the activity of the different IP addresses occurred on different days and times over a

21   two-week period.  *Id.* at ¶ 15.  Indeed, Plaintiff concedes that while the Doe Defendants may have

22   participated in the same swarm, "they may not have been physically present in the swarm on the

23   exact same day and time." Application at 18; Complaint, Ex. A.  As a result, the Court finds

24   unpersuasive the allegation that the Does acted in concert.  Therefore, the Court concludes that

25   joinder of the Doe Defendants in this action does not satisfy Rule 20(a).

26        **2.**    **Discretionary Severance**

27        Even if joinder of the Doe Defendants in this action met the requirements of Rule 20(a) of

28   the Federal Rules of Civil Procedure, the Court finds it is appropriate to exercise its discretion to

United States District Court
For the Northern District of California

1   sever and dismiss all but one Doe Defendant to avoid causing prejudice and unfairness to

2   Defendants, and in the interest of justice. *See Wynn*, 234 F. Supp. 2d at 1088.

3      First, permitting joinder in this case would undermine Rule 20(a)'s purpose of promoting

4   judicial economy and trial convenience because it would result in a logistically unmanageable case.

5   *See Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 232-33 (M.D. Tenn) (holding permissive

6   joinder of 770 putative defendants would not promote judicial economy because the court's

7   courtroom could not accommodate all of the defendants and their attorneys, and therefore could not

8   hold case management conferences and could not try all of plaintiff's claims together). Second,

9   permitting joinder would force the Court to address the unique defenses that are likely to be

10   advanced by each individual Defendant, creating scores of mini-trials involving different evidence

11   and testimony. In this respect, the Court also notes that in Exhibit A to the Complaint there are listed

12   at least thirteen different internet service providers associated with Doe Defendants, which could

13   also give rise to different ISP-specific defenses, evidence, and testimony. *See* Complaint, Ex. A.

14      Finally, the Court finds that permissive joinder of the Doe Defendants does not comport with

15   the "notions of fundamental fairness," and that it will likely cause prejudice to the putative

16   defendants. *See Coleman*, 232 F.3d at 1296. The joinder would result in numerous hurdles that

17   would prejudice the defendants. For example, even though they may be separated by many miles

18   and have nothing in common other than the use of BitTorrent, each defendant must serve each other

19   with all pleadings – a significant burden when, as here, many of the defendants will be appearing

20   *pro se* and may not be e-filers. Each defendant would have the right to be at each other defendant's

21   deposition – creating a thoroughly unmanageable situation. The courtroom proceedings would be

22   unworkable – with each of the 188 Does having the opportunity to be present and address the court

23   at each case management conference or other event. Finally, each defendant's defense would, in

24   effect, require a mini-trial. These burdens completely defeat any supposed benefit from the joinder

25   of all Does in this case, and would substantially prejudice defendants and the administration of

26   justice.

27      Moreover, the Court notes that Plaintiff's allegation that all Doe Defendants meet the Rule

28   20(a) joinder requirements is speculative and conclusory. For example, while Plaintiff asserts that

United States District Court
For the Northern District of California

1  Doe Defendants conspired with each other to download the work, Plaintiff also asserts that "each

2  defendant is a *possible* source of Plaintiff's file, and *may* be responsible for distributing the file to the

3  other defendants." Application at 19 (emphasis added). Plaintiff also concedes the Doe Defendants

4  "may not have been physically present in the swarm on the exact same day and time." Application at

5  18; Complaint, Ex. A. In light of Plaintiff's uncertainty about the role of each particular Doe

6  Defendant and the relationship between the Doe Defendants, the Court finds it appropriate to

7  exercise its discretion to sever all of the Doe Defendants but one in the interest of fairness. The

8  Court rejects Plaintiff's assertion that severing the Doe Defendants would "practically prevent

9  copyright holder plaintiffs from being able to protect their material," as the Court's severance does

10  not preclude Plaintiff from filing individual copyright infringement actions against each Doe

11  Defendant. Application at 23.

12  **V.    CONCLUSION**

13    For the reasons stated above, the Court severs all Doe Defendants except Doe Defendant at

14  IP address 173.55.54.77 (the first Doe Defendant listed in Exhibit A to the Complaint that has not

15  been dismissed from the action). Because the Doe Defendant at IP address 24.5.180.56 has been

16  dismissed from the action, the subpoena against that Doe Defendant is no longer in effect.

17  Accordingly, the Motion to Quash is Granted on that basis. Moreover, because all severed Doe

18  Defendants have now been dismissed, all subpoenas seeking discovery regarding all Doe Defendants

19  except Doe 173.55.54.77 are ordered QUASHED. The claims against the severed Doe Defendants

20  are DISMISSED without prejudice to refiling in separate actions.

21    IT IS SO ORDERED.

22

23  Dated: August 23, 2011

24

25  _____

JOSEPH C. SPERO

26  United States Magistrate Judge

27

28

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

HARD DRIVE PRODUCTIONS, INC.,

            Plaintiff,

v.                                       ACTION NO. 2:11cv345

JOHN DOES 1-30,

            Defendants.

## OPINION AND ORDER

The Motion to Sever (ECF No. 12) is brought before the undersigned by pro se Defendant John Doe IP Address 69.143.57.188 ("John Doe") requesting that John Doe be severed from the rest of the Doe Defendants ("Doe Defendants"). [1] The Motion to File Under Seal (ECF No. 9) is brought before the undersigned by John Doe to proceed anonymously in the case.

## I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff Hard Drive Productions, Inc., ("Plaintiff") filed a Complaint on June 17, 2011, for copyright infringement against John Does 1-30. ECF No. 1. In the Complaint, Plaintiff alleges that Doe Defendants used BitTorrent based peer-to-peer networks to unlawfully distribute Plaintiff's copyrighted materials, an adult video titled "Amateur Allure- Zoe," in violation of the United States Copyright Act, 17 U.S.C. §§ 101, *et seq*. Compl. ¶¶ 1, 3, and 5. To establish personal jurisdiction in this district, Plaintiff used geolocation technology to trace the IP

---

[1] While only one Defendant, John Doe, has filed a Motion to Sever, in the interest of justice, the Court, *sua sponte*, determined that this Opinion and Order was necessary to conform to the Federal Rules of Civil Procedure.

addresses of each Doe Defendant to a point of origin within Virginia. Compl. ¶ 6.

On the same day the Complaint was filed, Plaintiff filed an Ex Parte Motion for Leave to take Discovery prior to the Rule 26(f) Conference (ECF No. 3) in order to issue Rule 45 subpoenas to the ISPs providing IP addresses for Defendants. Mot. for Expedited Disc. 1. This motion was filed in an effort to gain immediate access to the names, addresses, telephone numbers, and email addresses of the Doe Defendants, which the Internet Service Providers ("ISPs") maintain for only a short period of time. Id. On July 1, 2011, the Court granted Plaintiff's Motion to Expedite Discovery (ECF No. 5), allowing for immediate service of the subpoenas, finding a great likelihood that such evidence would disappear without expedited discovery. Op. and Order 4, ECF No. 5.

On August 24, 2011, John Doe filed a Motion to File Under Seal (ECF No. 9), asking to proceed anonymously to avoid any "harassment, injury, ridicule, or personal embarrassment" that may result from his identity being publicly revealed. Mot. to File Under Seal 4, ECF No. 9 (citing Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067-68 (9th Cir. 2000)). On August 31, 2011, Plaintiff filed a Response in Opposition to the Motion to File Under Seal (ECF No. 10), arguing that John Doe provided no evidence to suggest that any such harassment or ridicule *will* occur, or has occurred in other copyright infringement cases, but only that such injury is possible.

John Doe then filed a Motion to Sever (ECF No. 12) on September 8, 2011, alleging that Plaintiff has produced no evidence of concerted action amongst Defendants to warrant joinder, prejudicing the improperly joined Doe Defendants. Mot. to Sever 21. On September 26, 2011, Plaintiff responded to the Motion to Sever (ECF No. 14), arguing that all Defendants were properly joined because of their common scheme in using the BitTorrrent protocol to reproduce

and distribute Plaintiff's copyrighted materials amongst themselves. Opp'n to Mot. to Sever 4.

On October 13, 2011, another anonymous Doe Defendant ("Doe Defendant X") filed a letter under seal with the Court. Letter, ECF No. 16. In this letter, Doe Defendant X stated that he had been contacted by John Steele, Esq.[2] regarding this matter. During the phone call, Mr. Steele offered Anonymous the 'opportunity' to settle for $3,400 by October 18th. Mr. Steele informed Doe Defendant X that Doe Defendant X would be named as a defendant in the case should this settlement offer be rejected.

Though the Court did previously grant Plaintiff's request for leave to take discovery prior to the Rule 26(f) conference, the Court finds, upon due consideration, that Doe Defendants 2-30, including John Doe, have been improperly joined in violation of Federal Rule of Civil Procedure 20(a)(2) and must be severed.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. A district court possesses broad discretion in ruling on a requested severance under Rule 21. Hanna v. Gravett, 262 F. Supp. 2d 643, 647 (E.D. Va. 2003) (citing Saval v. BL, Ltd., 71 F.2d 1027, 1031-32 (4th Cir. 1983)).

Fed. R. Civ. P. 20(a)(2) states that permissive joinder of defendants is proper if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transaction or occurrences; and (B)

---

[2] John Steele, Esq., is an Illinois-based attorney, who has represented numerous other adult entertainment producers in cases now, or recently pending in the Northern and Southern Districts of Illinois. See VPR Internationale v. Does 1-1017, No. 11-2068, 2011 U.S. Dist. LEXIS 64656, at *6 n. 1 (C.D. Ill. Apr. 29, 2011). District judges have begun recognizing Steele's representation of these companies against multiple Doe Defendants, named without sufficient evidence as to their involvement, as "effort[s] to shoot first and identify his targets later." Mem. Order, Boy Racer, Inc. v. Does 1-22, No. 11-C-2984 ( C.D. Ill. May 5, 2011).

any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P

20(a)(2). Courts have routinely held that parties are misjoined when either of the preconditions

set forth in Rule 20(a) have not been satisfied. <u>Hanna</u>, 262 F. Supp. 2d at 647.

### III. <u>ANALYSIS</u>

The BitTorrent protocol at issue is a type of peer-to-peer network. In such peer-to-peer

networks, each individual internet user is called a "peer," and an entire group of users is

identified as a "swarm." Compl. ¶ 12.   While traditional file transfer protocols utilize a central

server, which distributes data directly to individual users, the BitTorrent protocol is a

decentralized method of distributing data.  Compl. ¶¶ 10-11. That is, by using this protocol, each

peer can download and upload a transferred file and distribute data to other members of the

swarm. Compl. ¶ 11. The names of the peers in the swarm are unknown, lending to great

anonymity; the users distribute and download materials under the cover of their IP address.

Compl. ¶ 14. These IP addresses are distributed to individuals by ISPs, who keep the logs of

these addresses for only a short period of time. Mot. to Expedite Disc. Ex. A ¶ 16. As the swarm

continues to expand, the distribution of copyrighted material quickens, further making this

protocol an extremely popular method of transferring files. Compl. ¶ 15.

Plaintiff relies on this "swarm" theory to claim that the Doe Defendants acted in concert

through a series of transactions to commit the infringement, giving rise to proper joinder.

Compl. ¶ 33. The Court, however, disagrees with this conception of proper joinder under the

Federal Rules of Civil Procedure. Because the Court finds that Plaintiff has failed to meet the

preconditions set forth in Rule 20(a), the Doe Defendants have been misjoined and must be

severed. <u>Hanna v. Gravett</u>, 262 F. Supp. 2d 643, 647 (E.D. Va. 2003).

Plaintiff has failed to show any right to relief against Doe Defendants arising out of the

same transaction, occurrence, or series of transactions or occurrences as required under Rule 20(a). See Mem. Order, K-Beech, Inc. v. John Does 1-85, Civ. A. No. 3:11cv469 (E.D. Va. Oct. 5, 2011) (granting a motion to sever in an almost identical case). Simply committing the "same type of violation in the same way does not link defendants together for the purposes of joinder." Laface Records, LLC v. Does 1-38, No. 5:07-cv-298, 2008 U.S. Dist. LEXIS 14544, at *7 (E.D.N.C. Feb.27, 2008). The Court agrees with Judge Spero's analysis in a recent decision from the United States District Court for the Northern District of California:

> Under the BitTorrent Protocol, it is not necessary that each of the Does 1-188 participated in or contributed to the downloading of each other's copies of the work at issue- or even participated in or contributed to the downloading by any of the Does 1-188. Any 'pieces' of the work copied or uploaded by any individual Doe may have gone to any other Doe *or to any of the potentially thousands who participated in a given swarm.* The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world. . . Indeed, Plaintiff concedes that while the Doe Defendants may have participated in the same swarm, they may not have been physically present in the swarm on the exact same day and time.

Hard Drive Prods., Inc. v. Does 1-188, No. C-11-01566, U.S. Dist. LEXIS 94319, at *39-40 (N.D. Cal. Aug. 23, 2011) (internal quotation marks omitted).

Further, in this District, several nearly identical cases are currently pending involving the alleged use of BitTorrent protocols to engage in copyright infringement. See Mem. Orders, K-Beech, Inc. v. John Does 1-85, Civ. A. No. 3:11cv469 (E.D. Va. Oct. 5, 2011), Patrick Collins, Inc. v. John Does 1-58, Civ. A. No. 3:11cv531 (E.D. Va. 2011 Oct. 5, 2011), Raw Films, Ltd. v. John Does 1-32, Civ. A. No. 2:11cv532 (E.D. Va. 2011 Oct. 5, 2011). In these aforementioned cases, as in the one before this Court, Plaintiffs sought, and the Court granted, expedited

discovery allowing Plaintiffs to issue Rule 45 subpoenas to Doe Defendants. Mem. Order 4, <u>K-Beech, Inc.</u>, Civ. A. No. 3:11cv469. Further, Doe Defendants in those cases indicated that Plaintiffs have contacted them directly, demanding compensation to end the litigation. <u>Id.</u> This threatening behavior on behalf of Plaintiffs in the cases listed above is identical in nature to the threatening phone call made to Anonymous by John Steele on October 13, 2011 in the instant case before this Court. Letter. Notably, when any Doe Defendant in the cases above has filed a motion to sever, Plaintiffs have hastily and voluntarily dismissed that Doe Defendant as a party in the matter to avoid the issue being presented to the Court for a resolution. Mem. Order 4, <u>K-Beech, Inc.</u>, Civ. A. No. 3:11cv469.

As opined in these cases, the Court agrees that mere allegations that Doe Defendants have used the same peer-to-peer network to copy and reproduce their videos is insufficient to meet the standards of joinder. <u>Millenium TGA, Inc. v. Does 1-21</u>, No. 11-2258, 2011 U.S. Dist. LEXIS, at *6-7 (N.D. Cal. May 12, 2011). Therefore, the Court concludes that joinder of the Doe Defendants in this action does not meet the threshold requirements of Rule 20(a). In the interest of fairness, the Court finds it appropriate to exercise its discretion under Rule 21 to sever all Doe Defendants, John Doe included, except Doe Defendant 1.

## IV.   ORDER

For the foregoing reasons, the Court finds that Plaintiff has not met its burden, as stated in Fed. R. Civ. P. 20, to establish proper joinder of John Doe and the other Doe Defendants. Further, the Court ORDERS Doe Defendants 2-30 severed from this matter.

Plaintiff is ORDERED to show cause by November 15, 2011 as to why all the materials gained by the Rule 45 subpoenas previously issued, in accordance with the Order of July 1, 2011 (ECF No. 5), should not be suppressed. Additionally, Plaintiff is ORDERED to show cause as to

why the severed Doe Defendants 2-30 should not be fully dismissed from the matter. Further, Timothy Andersen, Esq., attorney for Plaintiffs, is ORDERED, within 5 days of the entry of this Order, to advise the Court as to whether he is associated with John Steele, Esq. in any way in this case.

The Clerk is DIRECTED to mail a copy of this Order to all counsel on record and to all interested parties in the matter, and to electronically send a copy of this Order to John Doe at the e-mail address John Doe has provided.

It is so ORDERED.

_____/s_____
Tommy E. Miller
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
October 17, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BOY RACER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  11 C 2984 |
| | ) | |
| DOES 1-22, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM ORDER

It seems that attorney John Steele ("Steele") might be well
advised to stay away from Las Vegas or other casinos, because his
current filing on behalf of plaintiff Boy Racer, Inc.
has--despite odds in the range of 25 to 1--been assigned at
random to the calendar of this District Court, which had
previously been the recipient of another random assignment of a
Steele-filed action (that one being CP Productions, Inc. v. Does
1-300, No. 10 C 6255).  This Court had ended up dismissing the CP
Productions action for the reasons stated in its February 7, 2011
memorandum order and its February 24, 2011 memorandum opinion and
order, which (among other reasons) rejected attorney Steele's
effort to shoot first and identify his targets later.

As appeared to be true in the CP Productions case, it would
seem feasible for Steele and his client to pursue the normal path
of suing an identifiable (and identified) defendant or defendants
rather than a passel of "Does."  Moreover, that practice would
also facilitate the determination as to which defendant or

defendants is or are amenable to suit here in Illinois, as well as testing the viability of the currently amorphous Count II assertion of a civil conspiracy.

Accordingly, just as in CP Productions, both the Complaint and this action are dismissed without prejudice. As in that case, Boy Racer is free to advance its copyright infringement claims against one or more identified defendants on an individual basis or, if appropriate, a plausible conspiracy theory.

_____
Milton I. Shadur
Senior United States District Judge

Date:  May 9, 2011

2

5

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| BOY RACER, | ) | Case No.: C 11-02834 LHK (PSG) |
| Plaintiff, | ) | **ORDER GRANTING-IN-PART** |
| v. | ) | **PLAINTIFF BOY RACER, INC.'S** *EX* |
| | ) | *PARTE* **APPLICATION FOR LEAVE** |
| JOHN DOES 2-52, | ) | **TO TAKE LIMITED DISCOVERY** |
| | ) | **PRIOR TO RULE 26(F) CONFERENCE** |
| Defendants. | ) | **(Docket No. 3)** |
| | ) | |

Plaintiff Boy Racer, Inc. ("Boy Racer") applies *ex parte* for leave to take expedited and limited discovery prior to the Fed. R. Civ. P. 26(f) conference. In *Boy Racer, Inc. v. Does 1-52*, Case No. 11-2329, this court granted Boy Racer's motion for leave to take limited discovery as to Doe 1 only, and ordered Does 2-52 be severed and reassigned to an Article III judge.[1] Does 2-52 were severed and assigned the new case number above. Judge Koh is the presiding judge in this severed matter and any discovery matters have been referred to the undersigned.[2]

In the order granting-in-part Boy Racer's motion for leave to take limited discovery as to Doe 1 only, the undersigned noted that the motion raised the same issues as those recently addressed by the court in response to a near-identical motion for leave to take expedited discovery in *Diabolic*

---

[1]   *See* Docket No. 8.

[2]   *See* Docket No. 7.

ORDER, *page 1*

*Video Productions, Inc. v. Does 1-2099.*[3]  There, the undersigned granted leave to take expedited

discovery, but only as to Doe 1.  The court severed Does 2-2,099 and ordered the claims against

Does 2-2,099 be reassigned to an Article III judge with the recommendation that the claims against

Does 2-2,099 be dismissed without prejudice and, if re-filed within 20 days, deemed a continuation

of the original action for purposes of the statute of limitations.

In *Diabolic,* the undersigned found that the copyright owner had not adequately explained

how or why the peer-to-peer architecture of the BitTorrent protocol differed from other file-sharing

protocols considered in *Leface Records, LLC,*[4] *Interscope Records,*[5] *BMG Music,*[6] *or Twentieth*

*Century Fox Film Corp.*[7]  In each of those cases, the peer-to-peer nature of the protocol was

insufficient to justify joinder of dozens of otherwise unrelated defendants in a single action.

As previously discussed in *Diabolic,* before allowing expedited discovery to uncover the

identity of unnamed defendants, the district courts of this circuit must determine whether either of

two conditions applies.  The first is whether the requested discovery would fail to uncover the

identities sought.[8]  The second is whether the claim against the defendant could be dismissed.[9]  As to

the first *Gillespie* condition,[10] whether or not the individuals identified are ultimately liable under

---

[3]     *See Diabolic Video Productions, Inc. v. Does 1-2099,* No. 5:10-cv-05865-PSG, Amended Order Granting-In-Part Motion for Leave to Take Limited Discovery Prior to Rule 26(f) Conference (Docket No. 16).

[4]     No. 5:07-cv-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008).

[5]     No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004).

[6]     No. 06-01579, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. Jul. 31, 2006).

[7]     No. C 04-04862, Docket No. 12 (N.D. Cal. Nov. 16, 2004).

[8]     *See Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980); *see also Columbia Ins. Co. v. SeesCandy.com,* 185 F.R.D. 573, 577 (N.D. Cal. 1999) ("With the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line.  The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information.  Parties who have been injured by these acts are likely to find themselves chasing the tortfeasor from [ISP] to ISP, with little or no hope of actually discovering the identity of the tortfeasor.  In such cases the traditional reluctance for permitting filings against John Doe defendants or fictitious names and the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with a forum in which they may seek redress for grievances.").

[9]     *See id.* at 642.

[10]    *See id.*

1  Boy Racer's theory of infringement, the court is once again satisfied that the discovery sought here

2  would uncover the identities that Boy Racer seeks.  Boy Racer seeks leave to subpoena various

3  Internet Service Providers ("ISP") associated with certain IP addresses to produce the names,

4  addresses, email addresses, phone numbers, and Media Access Control numbers associated with

5  each IP address alleged to have conducted infringing activity.  The Hansmeier Declaration explains

6  that Media Copyright Group, LLC's proprietary file sharing forensic software captured the unique IP

7  address of each Doe Defendant.  If provided with the IP address and the date and time of the

8  infringing activity, the ISP can identify the Doe Defendant since the information is contained in its

9  subscriber activity log files.

10      To address the second *Gillespie* condition and to distinguish the technical architecture of

11  BitTorrent from those file-sharing protocols which other courts have found failed to justify joinder,

12  Boy Racer explains that users of the BitTorrent protocol have a higher degree of interactivity and

13  engage in "deep and sustained collaboration with their peers," as follows:

14      First, the protocol breaks a single large file into a series of smaller distributable
        pieces.  Then, an initial file-provider (the "seeder") intentionally elects to distribute
15      the pieces to third parties.  This is called "seeding."  Other users ("peers") on the
        network, download a small "torrent" file that contains directions on where to find the
16      seeder as well as an index of the pieces.  The torrent file is loaded into BitTorrent
        software, and the software follows the directions on where to find the seeder as well
17      as an index of the pieces.  The torrent file is loaded into BitTorrent software, and the
        software follows the directions in the torrent file to connect to the seeder.  When a
18      piece download is complete, the peers automatically become seeders with respect to
        the downloaded pieces.  In other words, each peer in a swarm transforms from a pure
19      downloader (a "leecher" in BitTorrent vernacular) to a peer that is simultaneously
        downloading and distributing pieces of a file.  By this mechanism, each peer
20      collaborates with others in the swarm to complete the distribution of a file.  A piece
        shared by the initial seeder or any later seeders will be distributed amongst the peers
21      countless times over– even if the seeder leaves the swarm.  Users can be connected to
        one another over the span of weeks simply via the initial download.[11]
22

23  Boy Racer goes on to note:

24      The BitTorrent file distribution protocol leads to a rapid viral spreading of a file
        through willful peer users, all of whom are both intentionally uploading and
25      downloading portions of the file simultaneously.  As more peers intentionally join the
        swarm for the copyrighted works, the likelihood of a successful download increases.
26      Due to the nature of the BitTorrent protocol, any peer that has downloaded a file prior
        to the time a subsequent peer downloads the same file is automatically a possible, and
27      even a likely, source of the file for the subsequent peer.  Indeed, a majority of the
        prominent adult content torrent-indexing websites mandate that users maintain a
28      minimum upload/download ratio, which means that users who download a file via the

---

[11]     *See* Docket No. 3 at 25.

ORDER, *page 3*

BitTorrent protocol are highly likely to serve as seeders in order to assure that they meet ratio requirements. Essentially, because of the nature of the swarm downloads, every infringer is simultaneously illegally downloading and distributing copyrighted material through collaboration from many other infringers, through a number of ISPs, in numerous jurisdictions around the country– although this lawsuit is isolated to peers who are believed to be located exclusively in California.[12]

According to Boy Racer, this greater extent of "cooperation and concerted action" among BitTorrent users than among users of other protocols makes joinder proper here.

Even with the description of the BitTorrent technology provided by Mr. Hansmeier, the court remains unpersuaded that the peer-to-peer architecture of the BitTorrent technology justifies the joinder of otherwise unrelated defendants in a single action. First, the Hansmeier declaration argues at length about the "concerted activity" within a given swarm. Presumably he does so in response to the concern highlighted by Judge Ryu[13] that users in different swarms have nothing in common other than downloading the same work, which as this court and others have noted is insufficient under our precedent. But the Hansmeier declaration itself offers overwhelming evidence that the IP addresses were in fact gathered from multiple swarms.[14] Second, even if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses "acted in concert" with all of the others. In fact, the nearly six-week span covering the activity associated with each of the addresses calls into question whether there was ever common activity linking the 51 addresses in this case. In this age of instant digital gratification, it is difficult to imagine, let alone believe, that an alleged infringer of the copyrighted work would patiently wait six weeks to collect the bits of the work necessary to watch the work as a whole. At the very least, there is no proof that bits from each of these 51 addresses were ever assembled into a single swarm. As the court previously explained, under this court's precedent regarding other file sharing protocols,

---

[12]   *See id.* at 26.

[13]   *See Pacific Century Intern. Ltd. v. Does 1-101,* Case No. 11-02533, Docket No. 7 (N.D. Cal. Jul. 8, 2011).

[14]   *See, e.g.*, Docket No. 3, paragraph 13 ("[the first step in the infringer-identification process is to locate swarms where peers are distributing the copyrighted creative works."); paragraph 15 ("I used all three methods to locate swarms associated with Plaintiff's exclusive license.").

ORDER, *page 4*

1   merely infringing the same copyrighted work over this period is not enough.[15]  Finally, nothing in

2   the BitTorrent architecture changes the fact that each defendant also will likely have a different

3   defense.  As the district court in *BMG Music* put it:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access
> was abused by her minor child, while John Doe 2 might share a computer with a
> roommate who infringed Plaintiffs' works.  John Does 3 through 203 could be
> thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and
> depriving them, and their artists, of the royalties they are rightly owed.[16]

7   Boy Racer's motion is therefore GRANTED, but only as to Doe 2 and as follows.

8        IT IS HEREBY ORDERED that Boy Racer is allowed to serve immediate discovery on Doe

9   2's ISP listed in Exhibit A to the Complaint by serving a Rule 45 subpoena that seeks information

10  sufficient to identify Doe 2, including the name, addresses, telephone numbers, and email addresses

11  of Doe 2.  Boy Racer's counsel shall issue its subpoena and shall include a copy of this order.

12       IT IS FURTHER ORDERED that the ISP will have 30 days from the date of service upon it

13  to serve Doe 2 with a copy of the subpoena and a copy of this order.  The ISP may serve Doe 2 using

14  any reasonable means, including written notice sent to Doe 2's last known address, transmitted either

15  by first-class mail or via overnight service.  The ISP and Doe 2 each shall have 30 days from the

16  date of service to file any motions in this court contesting the subpoena (including a motion to quash

17  or modify the subpoena).  If that 30-day period lapses without Doe 2 or the ISP contesting the

18  subpoena, the ISP shall have 10 days to produce to Boy Racer the information responsive to the

19  subpoena with respect to Doe 2.

20       IT IS FURTHER ORDERED that the ISP shall not assess any charge to Boy Racer in

21  advance of providing the information requested in the subpoena, and that the ISP that receives a

22  subpoena and elects to charge for ths costs of production shall provide a billing summary and cost

23  reports that serve as a basis for such billing summary and any costs claimed by the ISP.

24       IT IS FURTHER ORDERED that the ISP shall preserve all subpoenaed information pending

25

26   ───────────────

27   [15]   *See Diabolic Video Productions, Inc. v. Does 1-2099,* No. 5:10-cv-05865-PSG, Amended
Order Granting-In-Part Motion for Leave to Take Limited Discovery Prior to Rule 26(f) Conference
(Docket No. 16).

28   [16]   *See BMG Music v. Does 1-203,* Case No. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr.
2, 2004).

1 | the ISP delivering such information to Boy Racer or the final resolution of a timely filed and granted
2 | motion to quash the subpoena with respect to such information.
3 |     IT IS FURTHER ORDERED that any information disclosed to Boy Racer in response to a
4 | subpoena may be used by Boy Racer solely for the purpose of protecting its rights under the
5 | Copyright Act, 17 U.S.C. § 101 et seq.
6 |     IT IS FURTHER RECOMMENDED that Does 3-52 be severed from this action and Boy
7 | Racer's action against Does 3-52 be dismissed without prejudice.  The undersigned further
8 | recommends that if Boy Racer refiles separate complaints against Does 3-52 within 20 days of this
9 | order, such actions should be deemed a continuation of the original action for purposes of the statute
10 | of limitations.
11 | **IT IS SO ORDERED.**
12 | Dated:  August 5, 2011

PAUL S. GREWAL
United States Magistrate Judge

ORDER, *page 6*