# Exhibit A

# Exhibit A

**\*\* E-filed March 30, 2012 \*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC., | No. C11-03825 HRL |
| Plaintiff, | **ORDER DENYING APPLICATION FOR LEAVE TO TAKE EXPEDITED DISCOVERY AND SEVERING DOES 2-90** |
| v. | |
| DOES 1-90, | |
| Defendants. | [Re: Docket No. 6] |

This case is one of dozens of "mass copyright violation" cases filed in district courts recently against Doe defendants who allegedly used BitTorrent file-sharing technology to illegally up- and download copyrighted files from the Internet.[1] Here, plaintiff has sued 90 Doe defendants, but lawsuits of this type may include as few as two dozen or as many as two thousand defendants. While each case is unique, they follow a similar pattern.

---

[1] Hard Drive filed 19 cases in this district alone in 2011, many of which have already been dismissed. See, e.g., Hard Drive Productions, Inc. v. Does 1-166, C:11-03682-LHK (N.D. Cal. July 27, 2011); Hard Drive Productions, Inc. v. Does 1-84, C:11-03648-HRL (N.D. Cal. July 26, 2011); Hard Drive Productions, Inc. v. Does 1-66, C:11-03005-LHK (N.D. Cal. June 17, 2011); Hard Drive Productions, Inc. v. Does 1-69, C:11-03004-HRL (N.D. Cal. June 17, 2011); Hard Drive Productions v. Does 1-80, C:11-02535-PSG (N.D. Cal. May 25, 2011); Hard Drive Productions, Inc. v. Doe, C:11-05634-PJH (N.D. Cal. Nov. 21, 2011); Hard Drive Productions, LLC v. Doe, C:11-05631-SBA (N.D. Cal. Nov. 21, 2011); Hard Drive Productions, LLC v. Does 1-33, C:11-03827-LB (N.D. Cal. Aug. 3, 2011); Hard Drive Productions, LLC v. Does 1-130, C:11-03826-DMR (N.D. Cal. Aug. 3, 2011). Hard Drive's counsel has filed dozens more cases on behalf of similar plaintiffs. See, e.g., Pacific Century Int'l, Ltd. v. Does 1-129, C:11-03681-HRL (N.D. Cal. July 27, 2011); AF Holdings LLC v. Does 1-135, C:11-03336-LHK (N.D. Cal. July 7, 2011); Boy Racer, Inc v. Does 1-52, C:11-02329-PSG (N.D. Cal. May 5, 2011); Pink Lotus Entertainment, LLC v. Does 1-46, C:11-02263-HRL (N.D. Cal. May 6, 2011).

The plaintiff claims to own title to one or more copyrights in a film, usually a work of adult entertainment, and claims widespread infringement of its copyright(s) by individuals using the popular file-sharing internet protocol known as BitTorrent. Not knowing the names of these individuals, plaintiff sues "Does," each one represented to be the user of one of the IP addresses[2] that plaintiff claims it observed uploading or downloading the copyrighted work in a single BitTorrent "swarm."

In BitTorrent vernacular, an individual downloader is called a "peer." The complete version of the specific file is called a "seed." A peer who shares a seed through BitTorrent is called a "seeder." The seeder creates a file that contains BitTorrent protocol code for how to find the seed (a "torrent file") and uploads the torrent file to a website where peers store such files (a "torrent indexing site"). As additional peers find the torrent file, their BitTorrent programs run the code and begin to download random pieces of the seed file and then upload those pieces to other peers running the torrent file. This exchange of pieces of the seed file between peers is a "swarm." Peers do not choose which pieces are downloaded and uploaded (this is determined by the code in the torrent file), nor do they choose the peers to and from whom they send and receive pieces.

After filing suit, the plaintiff requests that the court let it conduct expedited discovery, by subpoenaing the various ISPs whose IP addresses appear in the swarm, ostensibly to identify and name the defendants in the action. Ordinarily, such discovery is prohibited by Fed. R. Civ. P. 26(d). However, plaintiff assures the court that if it will permit this "limited" discovery, the plaintiff can subpoena the ISPs for subscriber information associated with each IP address, and then name and serve the defendants so that the case may go forward.

Following the pattern, Hard Drive now seeks limited discovery under Fed. R. Civ. P. 26(d) and Fed. R. Civ. P. 45 in order to identify the 90 Does named in this suit by issuing subpoenas on the relevant ISPs. Dkt. No. 16 ("Application"). Plaintiff has consented to the undersigned's

---

[2] IP addresses are unique identifying numbers that Internet Service Providers ("ISPs") assign to their subscribers. Many IP addresses are "dynamic," meaning that they are assigned when a user connects to the Internet, and they change "from time to time." Dkt. No. 6, Exh. 1 ¶ 16 ("Hansmeier Decl."). Plaintiff contends that "nearly all" of the IP addresses listed in this action are dynamic, though it does not explain how one can determine the nature of an IP address. See Hansmeier Decl. ¶ 17. ISPs do keep logs of the IP addresses they assign to their subscribers, at least temporarily. Id.

jurisdiction pursuant to 28 U.S.C. § 636(b). Based on the Application, supplemental briefing, arguments at hearing, and all applicable authority, the court rules as follows.

## I. BACKGROUND

On August 3, 2011, plaintiff Hard Drive Productions, Inc. ("Hard Drive") filed this lawsuit for copyright infringement against 90 Doe defendants. Dkt. No. 1 ("Complaint"). Hard Drive alleges it owns a copyright for the adult file "Amateur Allure—Natalia" and claims that the defendants illegally distributed the film in a BitTorrent swarm. Plaintiff alleges that it observed all 90 of the Doe defendants in the swarm at some point over a period of 63 days. See Complaint ¶ 8; see also Complaint, Exh. A (listing the 90 IP addresses and the date and time when plaintiff alleges they appeared in the swarm).

On August 10, 2011, plaintiff filed an ex parte application for leave to take "*limited*" discovery "*solely* to determine the true identities of Doe Defendants that Plaintiff will fully identify over the course of this litigation." Application p. 8 (italics in original). This court set a hearing on the application, and requested supplemental briefing on three issues: 1) further details on the date(s) and time(s) each IP address appeared in the swarm; (2) to what extent IP addresses provide geographic information; and (3) how plaintiff planned to proceed should its application be granted. The court held a hearing on November 29, 2011.

## II. LEGAL STANDARD

Under Fed. R.Civ. P. 26(d)(1), discovery is not permitted without a court order prior to a conference between the parties as required by Fed. R. Civ. P. 26(f) and then only upon a showing of "good cause." Semitool, Inc. v. Tokyo Electron American, Inc., 208 F.R.D. 273, 275 (N.D. Cal. 2002). When considering good cause, courts consider: whether (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be

3

possible. See Patrick Collins v. John Does 1-54, 2012 U.S. Dist. LEXIS 36232, *8 (D. Ariz. Mar. 19, 2012).

When plaintiffs do not know defendants' identifies at the time a complaint is filed, courts may grant plaintiffs early discovery to determine the doe defendants' identities "unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). In Gillespie, the Ninth Circuit held that the district court abused its discretion in denying early discovery because it was "very likely" that the requested early discovery—interrogatories directed to named defendants—would "have disclosed the identities of the 'John Doe' defendants." Id. at 643; see also Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting Gillespie, 629 F.2d at 642); Young v. Transportation Deputy Sheriff I, 2009 WL 2011201 at *1 (9th Cir. July 6, 2009) (applying the Gillespie standard).

### III. DISCUSSION

#### A. The Gillespie Factors

Under Gillespie, the court asks whether the requested early discovery is "very likely" to reveal the identities of the Doe defendants. Gillespie, 629 F.2d at 643; AF Holdings LLC v. Does 1-96, No. 11-03335-JSC, Dkt. No. 14 (N.D. Cal. Dec. 1, 2011). Plaintiff agues that its request is "far from unique," and will allow it to "fully 'identify' . . . each [BitTorrent] user suspected of violating the plaintiff's copyright." Application, p. 2. "Once the plaintiff has a doe defendant's contact information, the defendant will be contacted and formally named in the suit, service will be effectuated, and the case will be allowed to proceed." Id. at 2-3. However, at the November 29 hearing, plaintiff's counsel told quite a different story about how events would proceed if limited early discovery were granted.

Although plaintiff contends that it will "fully identify" the Doe defendants if it can subpoena the ISPs for subscriber information, the subpoena is only the first step in a lengthy extra-judicial investigation that may or may not lead to naming any Doe defendants in this lawsuit. In response to a subpoena, the ISP produces the identity and contact information of the subscriber associated with a particular IP address. This subscriber may be the infringer who participated in the swarm, or he

4

may just be the person who pays for internet access in a given household. Multiple people may, and often do, use a single ISP subscription—family members, roommates, guests, or other individuals (unknown to the subscriber) who access the internet using any unprotected wireless signals they can find. The named ISP subscriber may or may not be the infringer, as plaintiff acknowledges by saying that it may need to take further discovery even after it locates the subscribers whose IP addresses appeared in the swarm. Dkt. No. 16, p. 4.

Plaintiff argues that only by subpoenaing the ISPs can it begin the process of identifying Doe defendants. Dkt. No. 6, p. 8. Once it receives subscriber information from the ISPs, plaintiff sends each ISP subscriber a letter of "introduction" that may contain a settlement demand.[3] Presumably, this letter informs the subscriber that he has been named in a lawsuit for infringement of a copyrighted pornographic work, and suggests that plaintiff intends to name him in the lawsuit. Next, if the subscriber is amenable to communicating with plaintiff, they may "meet and confer" to discuss the litigation. If it has not already done so, plaintiff may then extend a settlement demand. If the subscriber refuses to settle, or denies responsibility in the matter, plaintiff conducts "research" to find out more information about the subscriber (and other users of his ISP subscription). The plaintiff asks all subscribers to offer "a valid defense that is substantiated by credible evidence." Dkt. No. 16, p. 4. If a subscriber can offer such a defense, plaintiff says it will drop its case against that person. If the subscriber cannot provide a so-called "valid defense," plaintiff "will likely serve and name" him with process. If the subscriber alleges that some other user of his ISP subscription is responsible, the plaintiff might serve the other user. Plaintiff finally states that if a subscriber "deliberately evades" plaintiff's attempts to meet and confer, then plaintiff might need to request further discovery. Dkt. No. 16, p. 4.

Thus, plaintiff will only consider naming and serving a defendant after it has (1) contacted the ISP subscriber one or more times, (2) researched that subscriber and anyone else who might

---

[3] In its Application, plaintiff says nothing about making settlement demands to Does, and states unequivocally that, upon receipt of ISP subscriber information, plaintiff will name and serve the Does in this action. Dkt. No. 6, pp. 2-3. But, in plaintiff's supplemental briefing, it admits that it "may" extend offers of settlement to Does before it decides whether to serve them. Dkt. No. 16, p. 4. In response to the court's questions at the hearing, plaintiff equivocated about when subscribers receive settlement demands, but indicated that all subscribers receive such demands before plaintiff decides whether to name them as defendants.

5

have used the ISP subscription, (3) met and conferred with the subscriber; (4) attempted to settle with the subscriber, (5) elicited evidence of a defense from the subscriber, (6) evaluated the credibility of that evidence, and (7) found it wanting. In addition, plaintiff also admits that in the event that a subscriber refuses to "participate" in the above process, plaintiff may need to request further discovery. It is abundantly clear that plaintiff's requested discovery is not "very likely" to reveal the identities of the Doe defendants. Indeed, plaintiff admitted at the hearing that neither it nor any other plaintiff it is aware of has ever served a single defendant in one of these cases where early discovery has been granted.[4]

Accordingly, because plaintiff has not shown that the requested discovery is at all likely to uncover the identity of the Doe defendants, its application for leave to take expedited discovery must be denied.

### B. The Semitool Good Cause Analysis

Not only does the Application not meet the "very likely" standard of Gillespie, neither does it establish "good cause" under Fed. R. Civ. P. 26(d)(1) and Semitool.

#### 1. *Identification of Missing Parties as Persons Who Can Be Sued*

To satisfy this factor, the plaintiff must "identif[y] the Doe Defendants with sufficient specificity such that the Court can conclude that each Defendant is a real person or entity that would be subject to the Court's jurisdiction." AF Holdings LLC v. Does 1-96, 2011 U.S. Dist. LEXIS 134655, *6 (N.D. Cal. Nov. 22, 2011). This includes a showing that personal jurisdiction exists over the defendants. See id.; Berlin Media Art v. Does 1 - 654, 2011 U.S. Dist. LEXIS 120257, *4 (N.D. Cal. Oct. 18, 2011).

Plaintiff alleges in the complaint that it "used geolocation technology to trace the IP addresses of each Defendant to a point of origin within the State of California. . . . Although not a litmus test for personal jurisdiction, the use of geolocation gives Plaintiff good cause for asserting

---

[4] According to this court's research, at the time of the hearing 69 mass copyright infringement cases had been filed in this district. Of those, plaintiff obtained early discovery in 57 cases and issued subpoenas to obtain subscriber information for more than 18,000 IP addresses, No defendant has been served in any of these cases. See also Patrick Collins v. John Does 1-54, 2012 U.S. Dist. LEXIS 36232 (D. Ariz. 2012), *5, fn. 4 (citing AF Holdings v. Does 1-135, CV-11-1333-LHK (N. D. Cal. Feb. 24, 2012)) (noting that plaintiffs in these cases have never served a defendant in any action where early discovery was granted).

6

that personal jurisdiction is proper over the Defendants." Complaint ¶ 3. But, in its supplemental briefing and at hearing, plaintiff admitted that while geolocation "is the leading method for associating an IP address with an approximate geographic location," it is only truly reliable when predicting the *country* in which an IP address is located. Dkt. No. 16, p. 3.

Hard Drive alleges "in the alternative" that personal jurisdiction over any non-resident defendants is appropriate because "they downloaded copyrighted content from, or uploaded it to, California residents." Id. ¶ 4. Due process requires that a court only exercise personal jurisdiction over a nonresident defendant if that defendant has "minimum contacts" with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945). Each defendant's contacts with the forum state are evaluated individually. Calder v. Jones, 465 U.S. 783, 790 (1984). If the nonresident defendant's activities within the state are "substantial" or "continuous and systematic," there is a sufficient relationship between the defendant and the forum state to support general personal jurisdiction. Data Disc, 557 F.2d at 1287. If the defendant's activities in the forum state are not "substantial" or "continuous," limited jurisdiction only exists if there is a sufficient relationship between the defendant's contacts with the forum state and the claim at issue. Id.

Here, plaintiff urges the court to accept its assertion that the Doe defendants are California residents based on its use of geolocation technology. However, plaintiff acknowledged at the hearing that geolocation cannot reliably predict an IP address's state of origin. Moreover, plaintiff's counsel acknowledged that in cases where early discovery was granted, plaintiff often learned that some of the ISP subscribers did not live in the state where the lawsuit was brought. In light of these facts, the court cannot conclude that plaintiff has made even a prima facie showing that the Doe defendants reside in California. Therefore, the court must ask whether plaintiff has alleged minimum contacts sufficient to support the exercise of general or specific personal jurisdiction over any non-resident defendants. The complaint, which summarily asserts that the defendants "downloaded copyrighted content from, or uploaded it to, California residents, and thus committed copyright infringement," is insufficient to support the exercise of general or limited personal jurisdiction. The complaint does not allege that the Does were in the swarm at the same time, or that

7

any of them transferred pieces of the copyrighted work to a California resident. Even if plaintiff could show that each of the Doe defendants transferred a piece of the file to a California resident, this single, miniscule action would not constitute "minimum contacts" with the state of California. In the absence of a showing that minimum contacts exist for each Doe defendant, the court cannot exercise personal jurisdiction over the defendants.

Additionally, the court is concerned that plaintiff's activities in pursuit of settlement agreements with these and other Doe defendants constitute a serious misunderstanding of jurisdictional limits and potential abuse of the judicial system. At the hearing, plaintiff's counsel disclosed that the information received in response to subpoenas to ISPs is sent to a database where all subscriber information discovered in all of plaintiff's lawsuits is maintained. Plaintiff's counsel assured the court that he would only receive subscriber information from the database for subscribers located in California. However, plaintiff's counsel did not know whether counsel for Hard Drive in other states might send letters to non-California subscribers revealed through discovery in this case, telling them that they have been sued here in California and proposing settlement. As discussed above, this court has no basis for exercising jurisdiction over non-residents who lack minimum contacts with this state. Accordingly, any attempt by plaintiff to convince non-California residents, identified through discovery in this case, to settle rather than be sued in California would be a misuse of that discovery.

2. *Previous Steps Taken to Locate Defendants*

In mass copyright cases like this one, there is little plaintiff can do to "locate" defendants, since IP addresses are the only identifying feature plaintiffs can collect. This court has previously required plaintiffs to state the date and time of the alleged infringing activity, which plaintiff has done here. See Berlin Media Art e.k. v. Doe, 2012 U.S. Dist. LEXIS 7888, 6 (N.D. Cal. Jan. 24, 2012). Accordingly, this court agrees that plaintiff appears to have taken what steps it can to locate defendants.

3. *Withstanding a Motion to Dismiss*

To prevail on a claim of copyright infringement," plaintiff must prove (1) that it owns a valid copyright, and (2) that each defendant copied a work covered by the copyright. Berlin Media Art

8

e.k. v. Doe, 2012 U.S. Dist. LEXIS 7888, 6-7 (N.D. Cal. Jan. 24, 2012) (citing Online Policy Group v. Diebold, Inc., 337 F.Supp.2d 1195, 1199 (N.D. Cal. Sep. 30, 2004). "To be liable for direct infringement, one must actively engage in and directly cause the copying." Id. While the plaintiff has alleged that it owns a valid copyright and that defendants copied the copyrighted work, the court concludes that the complaint could and should be dismissed for misjoinder as to all but a single Doe defendant. Diabolic Video Prods. v. Does 1-2099, 2011 U.S. Dist. LEXIS 58351, *9 (N.D. Cal. May 31, 2011). While "joinder of claims, parties and remedy is strongly encouraged," Fed. R. Civ. P. 20 sets forth specific standards for permissive joinder. Under Rule 20, parties may be joined in a single lawsuit where the claims against them arise from a single transaction or a series of closely related transactions. If misjoinder is apparent, Fed. R. Civ. P. 21 is clear that misjoinder "is not a ground for dismissing an action." But while an action may not dismissed for misjoinder, a court may, on just terms, drop a party at any time *sua sponte*. MCGIP, LLC v. Doe, 2011 U.S. Dist. LEXIS 108109, *5 (N.D. Cal. Sept. 16, 2011) (citing Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997)); Fed. R. Civ. P. 21. See also Diabolic Video Prods. V. Does 1-2099, 2011 U.S. Dist. LEXIS 58351 at *9 (applying this standard for joinder to a similar mass copyright complaint and severing all but the first Doe defendant).

Multiple courts have held that "the mere allegation that defendants have used the same peer-to-peer network to infringe a copyrighted work is insufficient to meet the standards for joinder set forth in Rule 20." Berlin Media Art e.k. v. Doe, 2012 U.S. Dist. LEXIS 7888, *7-8) (citing Diabolic Video Productions, Inc. v. Does 1-2099, 2011 U.S. Dist. LEXIS 58351 at *3)). Alleging that defendants used a BitTorrent "swarm" does not itself prove that defendants engaged in "concerted activity." Boy Racer v. Does, 2011 U.S. Dist. LEXIS 86746, *8 (N.D. Cal. Aug. 5, 2011). Although plaintiff argues that the defendants' presence in the same BitTorrent swarm satisfies the standard for joinder, this allegation is insufficient to show that defendants engaged in concerted activity in a single transaction or closely related transactions, and warrants dismissal of improperly joined defendants.

Some courts have deferred the question of joinder and severance until after discovery has been authorized and a motion to quash has been filed. See, e.g., Call of the Wild Movie, LLC v.

9

Does 1-1062, 770 F. Supp. 2d 332, 339 (D.D.C. 2011). In Call of the Wild, the court accepted the proposition that BitTorrent protocol "'makes every downloader also an uploader of the illegally transferred file(s)'" and found joinder satisfied for purposes of permitting early discovery. Diabolic Video Prods. v. Does 1-2099, 2011 U.S. Dist. LEXIS 58351, *12 (quoting id.). The Diabolic court found that this proposition was too tenuous to justify early discovery of thousands of ISP subscribers' identities. Id. at 12-13. Rather, the Diabolic court considered joinder alongside the ex parte application for early discovery, and this court finds it appropriate to do the same.[5]

Here, plaintiff has failed to allege that its claims against the 90 Doe defendants arise from "a single transaction or a series of closely related transactions." Instead, plaintiff provides a list of all 90 Doe defendants, identified by IP addresses, and the date and time they each appeared in the swarm over a period of 63 days. See Complaint, Exh. A. Plaintiff also alleges that each Doe defendant "entered the same exact BitTorrent swarm and "reproduced and distributed the Video to multiple third parties." Complaint ¶ 29. But, plaintiff's counsel admitted at the hearing that plaintiff could not truthfully allege that any of the Doe defendants actually transferred pieces of the copyrighted work to or from *one another*. Rather, plaintiff's counsel could only argue that "probability" suggests these Doe defendants received pieces of the work from each other. This court finds plaintiff's probability argument illogical for two reasons: 1) each Doe defendant appeared in the swarm on a different date and time, hours, days, or weeks apart from one another; and 2) BitTorrent's appeal stems from the speed with which peers can download complete files, so it is extremely unlikely that one Doe would remain in the swarm long enough to have direct contact with another Doe who entered hours later. Plaintiff has not shown that the defendants acted in concert simply by appearing the same swarm at completely different times. Therefore, the court cannot find that "a single transaction or series of closely related transactions" connects these 90 Does and makes joinder proper.

---

[5] Indeed, simultaneous consideration of the application for early discovery and joinder has become the norm for courts in this district faced with similar cases. See, e.g., Hard Drive Prods. v. Doe, 2011 U.S. Dist. LEXIS 89858 (N.D. Cal. Aug. 12, 2011); Boy Racer v. Does, 2011 U.S. Dist. LEXIS 86746 (N.D. Cal. Aug. 5, 2011); Diabolic Video Prods. v. Does 1-2099, 2011 U.S. Dist. LEXIS 58351 (N.D. Cal. May 31, 2011).

10

  Because plaintiff is unable to allege that the Doe defendants acted in concert, joinder is improper and the complaint should be dismissed against Does 2-90 for misjoinder. Not only does this counsel against granting plaintiff's Application, it warrants severance of Does 2-90. Accordingly, Does 2-90 are SEVERED from the action without prejudice to plaintiff to file individual complaints against them.

    4. *Likelihood that Expedited Discovery Will Lead to Missing Parties' Identities and Service of Process*

  As discussed above, it is evident that expedited discovery will not lead to identification of the Doe defendants or service of process. Indeed, the fact that no defendant has ever been served in one of these mass copyright cases belies any effort by plaintiff to allege that the discovery *will* lead to identification of and service on the Doe defendants.

  In light of the first Gillespie factor that plaintiff show it "very likely" that discovery would lead to identification of the Doe defendants, as well as the issues raised by consideration of the Semitool "good cause" analysis, the plaintiff's Application is DENIED.

**IV. CONCLUSION**

  The court realizes that this decision may frustrate plaintiff and other copyright holders who, quite understandably, wish to curtail online infringement of their works. Unfortunately, it would appear that the technology that enables copyright infringement has outpaced technology that prevents it. The court recognizes that plaintiff is aggrieved by the apparent infringement and is sympathetic toward its argument that lawsuits like this one are the only way for it to find and stop infringers. However, the court will not assist a plaintiff who seems to have no desire to actually litigate but instead seems to be using the courts to pursue an extrajudicial business plan against possible infringers (and innocent others caught up in the ISP net). Plaintiff seeks to enlist the aid of the court to obtain information through the litigation discovery process so that it can pursue a non-judicial remedy that focuses on extracting "settlement" payments from persons who may or may not be infringers. This the court is not willing to do.

  Based on the foregoing, IT IS ORDERED THAT:

  1. Plaintiff's Application for Leave to Take Expedited Discovery is DENIED; and

11

2. Does 2-90 are SEVERED from this action without prejudice to plaintiff to file individual complaints against them.

Dated: March 30, 2012

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

12

**C11-03825 HRL Notice will be electronically mailed to:**

Brett Gibbs blgibbs@wefightpiracy.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**